UNITED STATES of America, Plaintiff,

v.

Joseph P. GORMAN, Defendant.

In re Application of Scott McLARTY to Enter Appearance of Counsel Pro Hac Vice.

No. Cr. 6–87–19–2.

United States District Court,
D. Minnesota,
Third Division.

June 8, 1987.

See also, 661 F.Supp. 1092.

MEMORANDUM & ORDER

DEVITT, District Judge.

Scott McLarty, an Athens, Georgia lawyer, has filed an application to appear pro hac vice as one of counsel for Joseph P. Gorman charged in this district with conspiracy to defraud the United States (Cr. 6–87–19–2). Gorman has been represented since indictment by Bruce Hanley, his retained Minnesota counsel.

Learning from the U.S. Attorney in the Northern District of New York that Scott McLarty had a criminal history and record of unprofessional conduct and that there were questions about his fitness for admission to practice here, the U.S. Attorney for the District of Minnesota conducted an investigation pursuant to his responsibility under the Local Rules of the United States District Court for the District of Minnesota. Under date of April 10, 1987, the U.S. Attorney, thru his assistant Donald M. Lewis, submitted a four page letter with attached exhibits "A" thru "O" with copies to Mr. McLarty and his attorney. The exhibits, consisting of court records, affidavits, and letters, reflect generally against Mr. McLarty's professional and moral fitness to practice law in this United States District Court.

Mr. Lewis' four page letter of April 10, 1987, with the attached Exhibits "A" thru "O" has been filed with the clerk for ready reference.

At the subsequent hearing on April 15, 1987, at which Mr. McLarty's counsel was present, the applicant was present and

spoke at some length. A transcript of that hearing has been prepared and a copy is filed with the clerk.

Following the applicant's sworn testimony, the court suggested he might want to offer counter-affidavits and other evidence. Under date of April 22, 1987, he submitted, thru Bruce Hanley, his attorney, five affidavits or declarations and four letters responding to past alleged unprofessional misconduct and in support of his application. Mr. Hanley's letter and the supporting material have been filed with the clerk for ready reference.

■ Mr. McLarty has conceded that admission of a non-resident attorney pro hac vice is a discretionary act under the rules of the United States District Court for the District of Minnesota, Local R. 1(D). It is well established that admission of an attorney to practice law is not a right but a privilege. *In re Snyder*, 472 U.S. 634, 105 S.Ct. 2874, 2881, 86 L.Ed.2d 504 (1985); *In re Belli*, 371 F.Supp. 111 (D.D.C.1974) appeal dismissed, sub. nom. *Belli v. Kelp*, No. 75–1275, D.C.Cir. Aug. 10, 1975. A United States District Court has authority to deny an attorney's application for admission when the court is not satisfied that he possesses good private and professional character, albeit he was previously admitted to practice in a state court. *In re GLS*, 745 F.2d 856 (4th Cir.1984). The U.S. Supreme Court has held that out of state attorneys do not have due process rights. *Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979).

■ Where a criminal defendant's right to retain counsel of his choice is at issue, the court must carefully balance the defendant's due process right with the public's general interest in the prompt, efficient, and orderly administration of justice. *United States v. Burton*, 584 F.2d 485 (D.C.Cir.1978); *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978). In so doing, it must be remembered that "the Sixth Amendment right to choice of counsel merely informs judicial discretion—it does not displace it." *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir.1976). "The freedom to choose one's counsel may not be used as a device to manipulate or subvert the orderly procedure of the courts or the fair administration of justice." *United States v. Casey*, 480 F.2d 151 (5th Cir. 1973).

With these legal principles in mind, this court entered an order on April 29, 1987, denying Mr. McLarty's application to appear pro hac vice. Subsequently, Mr. McLarty requested that this court provide specific findings supporting the denial. The following serves as the court's response to this request.

■ The material submitted by the United States Attorney, most of which has been confirmed by Mr. McLarty in his sworn testimony, reflects that McLarty has been disciplined by the Supreme Court of Georgia on three occasions since 1982—in 1982, 1983 and 1986, the details of which are outlined in Exh. A.

In June 1986, Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia issued an order (Exh. B) refusing to appoint McLarty to represent a defendant in a criminal case. He gave seven reasons:

a) Mr. McLarty has authored pleadings stating contentions which are outrageous, untrue, and unfounded, the effect of which can only erode the confidence of the public and the parties in the judicial system.

b) On several occasions Mr. McLarty has been tardy in his appearance at hearings and trials. On one occasion, because of purposeful delay, it was necessary for this Court to relieve Mr. McLarty of his representative responsibilities and to appoint another attorney to handle the case.

c) Mr. McLarty's method in this and other matters invariably involves an attack upon the prosecution and the court rather than a sincere representation of his client.

d) Mr. McLarty has appeared at court hearings whereat members of the court staff reported strong suspicions of his being under the influence of alcohol. On one occasion, Mr. McLar-

ty was detained from an appearance in court because of an arrest for driving an automobile while under the influence of alcohol, and he has been convicted of driving an automobile while under the influence of alcohol. All of these factors cause me to conclude that his use of alcohol or other substances interferes with the proper representation of his clients.

e) Mr. McLarty has exhibited an unseemly and unprofessional adherence to the obviously incorrect legal positions taken by his clients to a point which goes far beyond any reasonable standard of zealous representation.

f) Mr. McLarty has repeatedly and purposefully failed to follow instructions given from the bench which relate to the proper conduct of a trial during the evidence and argument phases thereof.

g) To endure Mr. McLarty's verbal onslaught requires a measure of patience and degree of objectivity which is difficult to muster, and I cannot willingly inflict his presence upon another court.

Mr. McLarty's written response to this order has been attached to Exh. B in the clerk's file.

Exh. C is an affidavit of Assistant United States Attorney Craig A. Benedict of the Northern District of New York telling of Mr. McLarty smelling strongly of alcohol in court on two occasions in 1984 and one occasion in 1987.

Exh. D is an affidavit of IRS agent James J. Molnar telling of Mr. McLarty smelling strongly of alcohol at 11 A.M. on March 26, 1987, in the United States Attorney's Office in St. Paul, Minnesota in connection with a discovery session in this case. Molnar also gave oral testimony.

Exh. E is a partial trial transcript of a case before Honorable Lloyd MacMahon in the Northern District of New York, in which Mr. McLarty admitted he had been in contempt of court on two occasions.

Exh. F is Mr. McLarty's FBI rap sheet.

Exh. K consists of documents concerning McLarty's 1972 conviction for criminal trespass.

Exhs. L and M record McLarty's prosecution for aggravated assault of his legal assistant in DeKalb County, Georgia, in 1980. His defense was intoxication from cocaine. He was acquitted.

Exh. N records McLarty's prosecution for possession of cocaine and marijuana in Hillsborough County, Florida in 1984. The prosecutor dismissed because of concerns over legality of the search conducted by the hotel.

Exh. O are documents pertaining to Mr. McLarty's 1984 conviction for driving under the influence in Rockdale County, Georgia. McLarty stated he had another DUI conviction in about 1981 in another county (Transcript, p. 21).

The records of the United States District Court for the District of Minnesota show that Mr. McLarty filed an answer for defendants in *United States of America v. David White, et al.*, 583 F.Supp. 1118 (D.Minn.1984), and a request to appear as counsel pro hac vice. He was directed to appear before this court on April 30, 1984, for hearing on the government's motion for an injunction. McLarty failed to appear or excuse or explain his absence. Local Minnesota counsel stepped in and represented defendants. The records of the United States District Court for the District of Hawaii in the case of *United States v. Norman N. Lanai*, Cr. 83–1489 reflect that on April 26, 1984, Mr. McLarty, representing defendant Lanai, was held in contempt of court for causing a "ruckus" and sentenced to jail by Honorable A. Andrew Hauk, United States District Judge. The records show that United States Marshal Faith P. Evans delivered prisoner McLarty to the custodian of the jail in Honolulu on April 26, 1984.

The record shows that Mr. McLarty has at least three convictions, criminal trespass (1972) (Exh. K; Transcript, p. 21) and two, or more, DUI's (Transcript, p. 21), and three convictions for contempt of court. The F.B.I. rap sheet (Exh. F) does not show the disposition of other charges such as

driving under the influence on October 12, 1986.

Two prosecutions of McLarty, although not resulting in convictions, are significant because each was occasioned by his admitted chemical addiction. I refer to his prosecution for aggravated assault of his legal assistant in DeKalb County, Georgia in 1980. The record (Exh. L and M) shows he was then a heavy user of drugs and his defense was intoxication by cocaine. The other case, a prosecution for possession of cocaine and marijuana in Hillsborough County, Florida, in 1984 (Exh. N) reflects, through the deposition testimony of Police Officer Samuel Bumgarner, that Mr. McLarty was very intoxicated from drugs and was in possession of 37 roaches of marijuana, straws, razor blades, and glasses. The Valtox test of the drugs was positive. Prosecution was turned down because of doubtful legality of the search. Were it not for his chemical addiction and the problems flowing from it, Mr. McLarty probably would have a non-objectionable personal and professional record. All of his convictions, except for the criminal trespass in 1972 (probably a college age exuberance), as well as these two aborted drug related prosecutions were occasioned by intoxication through use of chemicals.

A principal subject of testimony at Mr. McLarty's hearing was whether his admitted chemical dependency (Transcript, p. 19) interfered with the proper conduct of court proceedings and his representation of clients. Although McLarty denies that his consumption of alcohol or drugs has ever interfered with his professional duties (Transcript, p. 29), Judge Bowen specifically found that his use interfered with the proper representation of his clients (Exh. B). His alcohol abuse was also an issue in litigation in the Northern District of New York in 1984, and again in 1987. McLarty stated at the hearing that there were "drinking experiences" in the Northern District of New York (Transcript, p. 32, 33), but if he were drunk in the New York Federal Court in 1987, he "did better drunk than [the prosecution] did sober" (Transcript, p. 33, line 21). Other court personnel corroborated the evidence of McLarty's alcohol use on the job (Exhs. C and D).

Judge Bowen's specific finding regarding alcohol use was based on his professional contacts with McLarty in his home federal district. This finding was accompanied by numerous others in which Judge Bowen found McLarty to be dishonest, purposefully tardy, disobedient, and unprofessional. Judge Bowen's opinion is particularly weighty in light of McLarty's weak rebuttal, his admission that he is an habitual drinker, and his failure to represent that he could effect control over the problem.

McLarty dismisses Judge Bowen's opinion simply as an outgrowth of a relationship of mutual dislike. He uses this same defense with regard to difficulties he has had with Judge MacMahon (Transcript, p. 25). Personality clashes, of course, do not excuse the type of conduct outlined in Judge Bowen's order.

McLarty admits that he drinks on airplanes due to anxiety (Transcript, p. 22). He also states that he drinks due to the constant pain that he suffers (Transcript, p. 30). Although he correctly notes that occasional drinking is not uncommon in his profession, drinking to relieve constant pain and anxiety would seem to fall here more within the category of habitual use. Habitual drinking while flying is particularly pertinent to the proceedings in this case due to the distance between Georgia and this court.

McLarty seemed to admit the seriousness of his chemical dependency problem when he suggested the court instruct him to travel to Minnesota one day before each hearing to insure sobriety (Transcript, p. 31). Not only would this place the court in the position of a supervising probation officer, but indicates that McLarty can not voluntarily and independently control a problem that has already been found to be detrimental to his practice in federal courts.

Finally, McLarty's drug and drinking problem and its potential consequences in this litigation are particularly troublesome in light of his long-time chemical dependency history. He admits that he was a chemi-

cal addict with needle "scars up and down" his arms (Transcript, p. 28, line 13). Although he claims that the drugs and alcohol have not been a problem since 1984, his testimony is inconsistent in this and the record indicates that the drinking has basically served as a sometime replacement for other drugs. He apparently still uses codeine, but denies its use in the courtroom (Transcript, p. 22, line 15). He admits to at least two DUI convictions (at least a third is likely, on 10/12/86) (Transcript, p. 21) and the transcript indicates continuing abuse and attempted deception as to the true facts (Transcript, p. 30).

The court finds from the basically undisputed facts, most of them furnished by the applicant himself, that Mr. McLarty has been a chemically dependent person at least since his Vietnam War experiences. He claims he has been dry "since eighty—completely since 1984. I went into treatment in 1979, and since then there were two relapses. But none since '84" (Transcript, p. 28). His subsequent statements belie this (Transcript, p. 19, 30, 31). So do his admitted DUI convictions, his prosecution for aggravated assault while intoxicated by cocaine in 1980 (Exhs. L and M), and his prosecution for possession of cocaine and marijuana in Hillsborough, Florida in 1984 (Exh. N). It is quite clear from the chronological record of events that he used some form of chemicals in 1984 and in 1987 in the United States District Court for the Northern District of New York (Exh. C) and on several occasions in recent years in the United States District Court in the Southern District of Georgia (Exh. B) and even most recently in this district in preparation for this case (Exh. D).

It is reasonable to conclude that applicant's chemical dependency problem has been at least a contributing, if not a major, factor in occasioning disciplinary problems he has had with the Supreme Court of Georgia, the Georgia trial courts, and with United States district judges in other districts.

Based on the record of criminal history and unprofessional conduct reflected in court records, in Exh. "A" thru "O," as confirmed and supplemented by the sworn statement of the applicant, the evidence and arguments in support of the application and the reasonable inferences to be drawn from all submissions, the court finds Scott McLarty has not shown, at the present time, that he possesses good private and professional character and hence is not qualified for admission to practice pro hac vice in this case. I am satisfied, based on 50 years of knowledge of the high standards of personal and professional reputation and conduct required, that a person with his record would not qualify for admission to the Bar of the Supreme Court of Minnesota.

The defendant Gorman has always been well represented in this case by Bruce Hanley, his local counsel. The defendants charged in the indictment stated they were financially unable to hire counsel and the court has appointed qualified attorneys from the Minnesota Criminal Justice Panel to represent each of them. Hanley is a seasoned criminal defense lawyer of high reputation who has represented Gorman from the beginning with diligence and competence and will continue to do so.

In sum, Mr. McLarty's assurances that his conduct has not interfered with court proceedings and his representation of clients sharply contrast with the specific instances of interference and disruption contained in the record. Given the size and complexity of the instant multi-defendant case arising out of a lengthy criminal investigation, defendant Gorman's qualified right to a second attorney of his own choosing must give way to this court's orderly administration of justice.

The application is DENIED.