**In the Matter of Richard A. THALHEIM, Jr., Plaintiff-Appellant.**

No. 87–3683.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1988.

Lawrence N. Curtis, Lafayette, La., for plaintiff-appellant.

Richard A. Thalheim, Jr., Thibodaux, La., pro se.

Robert L. Picou, Houma, La., appellee.

Before THORNBERRY, WILLIAMS and SMITH, Circuit Judges.

PER CURIAM:

Appellant, Richard A. Thalheim, Jr., appeals an order by the United States District Court for the Eastern District of Louisiana suspending him from practicing law before it for consecutive three-month and two-year periods. Appellee is the Disciplinary Committee for the United States District Court for the Eastern District of Louisiana.

## I. *Facts and Prior Proceedings*

Pursuant to proceedings before its Committee on Professional Responsibility commenced in 1985, the Louisiana State Bar Association found appellant guilty of neglecting to deliver a client's funds to him promptly, commingling and converting those funds, and charging a client an excessive attorney's fee. *Louisiana State Bar Association v. Thalheim*, 504 So.2d 822, 827 (La.1987). Viewing the record and weighing both mitigating and aggravating circumstances, the Louisiana Supreme Court found Mr. Thalheim's conduct negligent rather than intentional, and imposed a three-month suspension from the practice of law in the State of Louisiana. *Id.* at 827–28. This period of suspension was effective from June 18, 1987, to September 18, 1987.

Subsequently, certain judges of the United States District Court for the Eastern District of Louisiana complained that appellant had engaged in possible misconduct in proceedings before them. In accordance with Rule V of the Rules of Disciplinary Enforcement of the Eastern District of Louisiana, the court appointed a panel of three attorneys to investigate and recommend whether or not disciplinary proceedings should be instituted. Appellant avers that the panel recommended that disciplinary proceedings were not warranted.[1]

Notwithstanding the panel's recommendation or lack of recommendation, a judge was assigned to conduct a disciplinary proceeding against appellant.[2] A two-and-a-half-hour hearing was held, during which the court considered two questions. The first was whether the federal court should impose sanctions on the basis of the Louisiana determination. The second was the charge that had earlier been made to the disciplinary panel and had been considered by it. This charge was that appellant should also be disciplined for violating Local Rule 2.5[3] by failing to disclose the

---

1. Appellant states that he has not seen the panel's report but was advised of its contents by panel members. Appellee states that "[t]he panel's findings and recommendations are not of record."

2. At the hearing, in response to appellant's objection to the proceeding going forward absent the panel's recommending disciplinary action, the hearing judge stated "[T]he judges who seek this hearing have the right to have it proceed notwithstanding any specific recommendation by others." For purposes of this appeal, it is unnecessary to determine whether the panel recommended against disciplinary action or submitted no recommendation.

3. The applicable rule, Rule 2.5, was then captioned, "Collateral Proceedings and Refiled Cases." Its first sentence read:
    "Whenever a civil matter commenced in or removed to the Court involves a cause of action or happening that either comprises all or a material part of the subject matter of another action (whether civil or criminal) then pending before this or another court or an administrative agency, or previously dismissed by this Court, or that is closely related to another such action either pending or previously dismissed, counsel shall append on a

separate sheet of paper, to the front of the complaint, a list and description of all such actions then known to counsel and a brief resume of the relationship.
    Rule 2.5 was amended, effective July 1, 1987 and recaptioned, "Related Proceedings and Refiled Cases." The amended version added a statement of legislative intent. The first sentence was amended as follows:
    Whenever a civil matter, commenced in or removed to the Court involves a ~~cause of action or happening~~ subject matter that either comprises all or a material part of the subject matter or operative facts of another action, ~~(whether civil or criminal)~~, then pending before this or another court or an administrative agency, or previously dismissed or decided by this Court, ~~or that is closely related to another such action either pending or previously dismissed,~~ counsel shall append on a separate sheet of paper, to the front of the complaint, a list and description of all such actions then known to counsel and a brief ~~resume~~ summary of the relationship.
    We do not address appellant's due process vagueness allegation, but we observe that both the title and the substantive language of the 1987 revision provide clearer notice of the rule's purpose and requirements than did the version under which appellant was charged.

existence of cases related to some of those he had tried before the court, for improperly splitting the causes of action in those cases, and for misrepresenting related matters to three of the district court's judges.[4]

Subsequently, the hearing judge issued a memorandum dated August 12, 1987, to all members of the Eastern District bench stating that he had found the allegations of misconduct true. The memorandum recommended that appellant be suspended from practice before the Eastern District for three months on the basis of his Louisiana misconduct, this suspension to run concurrently with the Louisiana suspension, and that he be suspended from practice in the Eastern District for a consecutive one-year period on the basis of his misconduct in the federal court. On August 13, 1987, pursuant to action by a majority of its members, the court suspended appellant for three months on the basis of and concurrent with the Louisiana suspension, and increased the sanction for the federal infractions over the recommended one-year suspension to two years. The August 13th order did not include any factual findings or conclusions of law.

## II. *Issues on Appeal and Analysis*

Appellant on oral argument expressly abandoned his appeal of his three-month suspension from practice before the district court that was based upon incidents giving rise to disciplinary action by the Louisiana Supreme Court. We summarily affirm the three-month suspension.

Appellant contests his two-year suspension from practice before the Eastern District which was based on his charged violations of the court's local Rule 2.5 and, perhaps, related infractions. Although he raises several issues on this appeal, two of them are dispositive. We find it unnecessary to consider the substantive merits of the charges against appellant.

**4.** Neither party refers to any rules or decisional law specifying that splitting causes of action or misrepresenting related matters constitutes misconduct. It is unclear whether the court

### A. *Proceeding despite absence of recommendation by attorney panel*

First, appellant contends that the court violated procedural due process by failing to follow its own requirements concerning proper disciplinary procedure when it instituted proceedings with respect to the alleged federal infractions despite the attorney panel's recommendation. We must agree. It is well-settled that federal district courts are bound by their own disciplinary rules when proceeding against attorneys for violation of ethical standards. See *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir.1986); *Matter of Abrams*, 521 F.2d 1094, 1104–05 (3d Cir.), cert. denied, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975). Rule V of the Rules of Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, reads, in relevant part:

(B) The Court shall appoint a standing committee of 42 members of the bar of this Court from which the Chief Judge of the Court shall designate a panel of at least three members thereof to investigate, in a given case, misconduct, or allegations thereof, to which Rules I(F) and IV relate, coming to the attention of a judge of the Court by complaint or otherwise, which, if substantiated, would warrant discipline of an attorney admitted to practice before this Court....

(C) 1. The panel shall complete its investigation with reasonable dispatch and shall make a report thereon in writing to the judge to whom the matter was allotted with a recommendation limited to whether or not a disciplinary proceeding should be instituted against the attorney who is the subject of the investigation....

2. If the recommendation be for institution of formal disciplinary proceedings, the Court shall designate a member or members of the bar of this Court, who need not be members of the standing committee or of the investigatory panel, to initiate and prose-

deemed these alleged actions further violations of Local Rule 2.5 or separate offenses grounded in other, unspecified, rules or standards.

cute proceedings as provided in Rule V(C).

3. In any case in which these rules do not require designation of counsel to initiate a disciplinary proceeding, or in which no such designation has been made, designation of counsel to prosecute such a proceeding shall be made by the Court as the necessity therefore appears.

■ Neither party refers us to prior decisions by this Court construing Rule V.[5] In reviewing the interpretation and application of ethical rules or norms, we "apply the 'clearly erroneous' test to the findings of fact while carefully examining the District Court's application of relevant ethical standards." *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir. 1981); *Brennan's, Inc., v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 171 (5th Cir. 1979); *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir.1976). In the present case, there were no findings of fact, and the facts are not before us. The only matters before us are questions of law.

1. *Possible authorization under Rule V(C)(3)*

First, we consider whether the district court was justified in going forward with formal disciplinary proceedings, despite the lack of recommendation by the investigatory attorney panel, under authority alleged to be found in Rule V(C)(3). A thorough examination of this language in the context of the court's Rules of Disciplinary Enforcement as a whole convinces us that Rule V(C)(3) does not provide such justification.

■ It is a basic principle of statutory construction that specific words within a statute may not be read in isolation from the remainder of the entire statutory scheme. *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir.1987). Rule V(B) specifies the types of alleged misconduct that are to be referred to an investigative

attorney panel for recommendation, namely, those described in Rules I(F) and IV. Rule I(F) provides for referral to an investigatory attorney panel where the court has received a certified copy of judgment of an attorney's conviction "for a crime not constituting a 'serious crime.'" Rule IV encompasses other specific types of misconduct for which attorneys may be disciplined, namely, for acts or omissions which violate: the laws of any states, territories of the United States, or the District of Columbia; the court's rules relating to the professional conduct of lawyers; or the Code of Professional Responsibility adopted by the court.

The wording of the court's regulatory scheme as it applies to this proceeding is in mandatory terms throughout. The word is "shall" not "may." First, the Chief Judge is required to designate a panel of at least three attorneys from the standing committee of 42 bar members to investigate alleged misconduct of the types characterized in Rules I(F) and IV. Rule V(B). *If* this panel recommends institution of formal disciplinary proceedings, the court *must* then designate counsel "to initiate and prosecute disciplinary proceedings as provided in Rule V(C)." Rule V(C)(2). Rule V(D) is crucial. It states that "[b]efore any final discipline is imposed for any misconduct to which the provisions of Rules I(F) and IV relate, a disciplinary proceeding *shall* be instituted by counsel designated for such purpose ..." (Emphasis added.) Rule V(C)(3) provides that in cases where "these rules do *not* require designation of counsel to initiate a disciplinary proceeding ..., designation of counsel to prosecute such a proceeding shall be made by the Court as the necessity therefore [*sic* ] appears." (Emphasis added.)

It follows, then, that the only cases in which the rules *require* designation of counsel, are those arising under Rules I(F) and IV, which also require referral to an investigative attorney panel for recommendation. The import of Rule V(C)(3) is that

---

5. Our own research has located only one case involving Rule V, *Dison v. Morrison*, No. 87–1127, (E.D. La., Mar. 23, 1988) [available on

WESTLAW, 1988 WL 28302] (referring a case of possible misconduct to an attorney panel for investigation pursuant to Rule V).

in cases where the rules do *not* require designation of counsel to initiate a disciplinary proceeding, namely, types of cases *other than* those enumerated under Rules I(F) and IV,[6] the court may designate counsel to prosecute the proceeding if it determines that such appointment is necessary. We conclude that Rule V(C)(3) does not authorize the court to designate counsel to prosecute cases arising under Rules I(F) and IV if the investigative attorney panel has *not* recommended institution of formal disciplinary proceedings pursuant to rule V(C)(1)-(2).[7]

### 2. *Possible authorization by implication*

■ Attorney disbarment and suspension cases are quasi-criminal in character. *In re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968); *Charlton v. Federal Trade Commission*, 543 F.2d 903, 906 (D.C.Cir.1976); *Matter of Abrams*, 521 F.2d at 1108 (Adams, J., dissenting). Accordingly, the court's disciplinary rules are to be read strictly, resolving any ambiguity in favor of the person charged. Moreover, the same principle of construction follows from the fact that it was the court that drafted these rules. The court wrote its own rules; it must abide by them. The court's disciplinary rules here at issue make no provision for the conduct of suspension proceedings absent recommendation by the investigative attorney panel provided for under the rules. To construe the rules' silence on this crucial matter to mean that the court may institute proceedings notwithstanding the absence of recommendation by the investigative panel would be to make a nullity of those sections of the rules that require the designation of such a panel to investigate and recommend with respect to alleged misconduct arising under Rules I(F) and IV. As a matter of interpretation, we cannot conclude that the court created these sections of its rules to be null or illusory.

### 3. *Authority under the court's inherent powers*

■ At oral argument, appellee urged that the court's disciplinary proceeding against appellant could be justified as an exercise of its inherent powers. Appellee did not advance that claim in its brief. *See* Federal Rules of Appellate Procedure, Rule 28(b), which states "The brief of the appellee shall conform to the requirements of [Rule 28] subdivision (a)(1)-(4), except that a statement of the issues or of the case [see (a)(2)-(3) ] need not be made unless the appellee is dissatisfied with the statement of the appellant." *See also Travelers Indemnity Co. v. Atlantic Express Line*, 837 F.2d 187 (5th Cir.1988); *Matter of Texas Mortgage Services Corp.*, 761 F.2d 1068, 1073–74 (5th Cir.1985). We need not decide here whether appellees' inherent powers claim was waived or untimely. We point out, however, that a district court's inherent power to discipline attorneys who practice before it does not absolve the court from the obligation to follow its own rules which it has created in order to implement its exercise of such power. *Stoneberger*, 805 F.2d at 1392–93; *Abrams*, 521 F.2d at 1103–05.

We find that Rule V clearly provides that formal disciplinary proceedings are to be instituted *if* the attorney panel investigating the complaint so recommends. The clear implication under the requisite strict construction is that absent such recommendation, formal disciplinary proceedings are not to be pursued. There is no evidence in the record that the panel investigating appellant's conduct recommended institution of disciplinary proceedings. Nevertheless, appellant was subjected to formal proceedings which culminated in the court's order

---

6. The other cases referred to in Rule V(C)(3) encompass instances where an attorney admitted to practice before the Eastern District has been subjected to discipline by some other court (Rule II), or has been disbarred on consent or resignation from the bar of another court (Rule III).

7. It is well established that a statute should be construed so that each of its provisions is given its full effect. Interpretations that render parts of a statute inoperative or superfluous are to be avoided. *Quarles v. St. Clair*, 711 F.2d 691, 701 n. 32 (5th Cir.1983).

suspending him for a two-year period. We find as a matter of law that the court failed to follow its own rules.

### B. Suspension despite absence of finding that appellant is morally unfit to practice law

Even if the district court had followed its own rules in instituting proceedings against appellant, we would be unable to affirm its order suspending him from practice for two years. Rule IV(B) of the Eastern District's Disciplinary Rules provides explicitly: "[D]iscipline by way of suspension or disbarment shall not be imposed unless any such violation be of sufficient gravity as to evidence a lack of moral fitness for the practice of law."

■■■ Appellant emphasizes that there was no proof that he was not morally fit to continue to practice law, that the court made no finding on this point, and that, accordingly, there was "no basis under the local rules to impose a suspension." We note that appellee's brief does not respond to this contention. Appellee addressed it at oral argument only in replying to questioning by the Court. The Eastern District's disciplinary rules do not *explicitly* require a stated finding that the charged attorney's misconduct evidenced "a lack of moral fitness for the practice of law."[8] But under the proper requirement of strict construction and the obviously extremely serious nature of such a finding, articulation of the requisite finding cannot be casually ignored by the district court. Further, such a finding is required in order to create an adequate record for appellate review. It is impossible to review the action of the district court without such a finding and clear convincing evidence in the record to support it.[9]

The privilege of practicing law 'is not "a matter of grace and favor" ' [*Willner v. Committee on Character and Fitness*, 373 U.S. 96, 102; 83 S.Ct. 1175, 1179-80, 10 L.Ed.2d 224 (1963) ]; on the contrary ... 'an attorney's license to practice [is] a "right" which cannot lightly or capriciously be taken from him.' ... [T]he power to withdraw that right 'ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct, which affect the standing and character of the party as an attorney.' [*Ex parte Wall*, 107 U.S. 265, 288, 2 S.Ct. 569, 589, 27 L.Ed. 552 (1883).] ...

Not surprisingly, then, it has become well settled that the charging party has the burden of proving that the charged attorney is no longer worthy of his office.

*Charlton v. Federal Trade Commission*, 543 F.2d at 906.

Apart from the fact that the court's own rules require that it find a "lack of moral fitness for the practice of law" before imposition of suspension, the United States Supreme Court has held that a specific finding that an attorney's conduct constituted bad faith must precede any sanction imposed under a district court's inherent powers. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 2465, 65 L.Ed. 2d 488 (1980). See also *Stoneberger*, 805 F.2d at 1393. There was no such finding here. At a minimum, we would have to remand to the district court for appropriate findings before we could consider affirming the two-year suspension.

Our review of the cases where courts have held that an attorney was not morally fit to practice law appears to show a requirement of more egregious misconduct on the part of the attorneys in question

---

**8.** At oral argument, in response to questioning, appellee advanced the contention that such a finding is implicit in the court's ruling, i.e., in the fact that it imposed sanctions. The critical question, however, is whether the court made the requisite finding. We are not prepared simply to assume that it did so.

**9.** In attorney suspension and disbarment cases, the charges must be sustained by clear and convincing proof. *In re Fisher*, 179 F.2d 361, 369 (7th Cir.), *cert. denied sub nom. Kerner v. Fisher*, 340 U.S. 825, 71 S.Ct. 59, 95 L.Ed. 606 (1950); *In re Ryder*, 263 F.Supp. 360, 361 (E.D. Va.), *aff'd* 381 F.2d 713 (4th Cir.1967) (adopting the district court's opinion).

than is found in the scanty record here.[10]

Courts have found that attorneys or bar applicants were not morally fit to practice law if such persons: used force or violence in attempting to overthrow the state or national government, or advocated such action, *Schware v. Board of Bar Examiners of the State of New Mexico*, 353 U.S. 232, 242, 245–46, 77 S.Ct. 752, 758, 760, 1 L.Ed. 2d 796 (1957); engaged in forgery and practiced law without a license, or submitted false affidavits to a bar admissions committee, *Konigsberg v. State Bar of California*, 353 U.S. 252, 263, 77 S.Ct. 722, 728, 1 L.Ed.2d 810 (1957); "authored pleadings stating contentions which are outrageous, untrue, and unfounded, the effect of which can only erode the confidence of the public and the parties in the judicial system," engaged in a trial method that "invariably involves an attack upon the prosecution and the court rather than a sincere representation of his client," and "repeatedly and purposefully failed to follow instructions given from the bench which relate to the proper conduct of a trial during the evidence and argument phases," *United States v. Gorman*, 661 F.Supp. 1087, 1088 (D.Minn.1987); attempted to induce a witness to testify falsely under oath in a judicial proceeding, *United States v. Friedland*, 502 F.Supp. 611, 619 (D.N.J. 1980) *aff'd* 672 F.2d 905 (3d Cir.1981); or obtained money under false pretenses and solicited another to commit the crime of bribery, *Matter of Caruso*, 414 F.Supp. 43, 44 (D.N.J.1976).

Because we reverse the district court's imposition of a two-year suspension on other grounds, we need not finally determine whether the court *could* have made a finding, on this record, that appellant's miscon-

duct reached such a level as to evidence lack of moral fitness for the practice of law. We do hold that Rule IV(B) requires that such a specific finding be made on the record before discipline by way of suspension or disbarment can be imposed. It was not made here.

### III. *Conclusions*

When a court undertakes to sanction an attorney for violating court rules, it is incumbent upon the sanctioning court to observe scrupulously its own rules of disciplinary procedure. If the rules are inadequate, the court can proceed to amend them. But unless and until such amendment occurs, attorneys have the right to rely upon the rules. A court cannot ignore and circumvent its rules at will to the detriment of those covered by them. We make no finding as to the merits of the district court's order. We find the two-year suspension procedurally invalid on either of the two grounds stated in part II of this opinion.

We affirm the district court's order imposing upon appellant a three-month suspension from practicing law before it between June 18, 1987 and September 18, 1987. We reverse the district court's order imposing an additional two-year suspension.

AFFIRMED IN PART and REVERSED IN PART.

JERRY E. SMITH, Circuit Judge, concurring in part and dissenting in part:

The panel majority, with the best of intentions, and with admirable attention to

---

**10.** The brief on behalf of the district court makes no attempt to rely upon the evidence involved in the state disciplinary proceeding to justify the federal two-year sanctions.

Neither party refers us to any cases in which an attorney has been disciplined for failure to observe the requirements of the Eastern District's local rule 2.5. Our own research has turned up just one case involving this rule, *Oliney v. Gardiner*, 771 F.2d 856 (5th Cir.1985). Here appellant "kept the filing of the second suit hidden from the court and opposing counsel," and "deliberately attempted to circumvent" Rule

2.5 "by filing, and failing to inform the court or opposing counsel of a second identical suit while the first suit was still pending." *Id.* at 859. In *Oliney*, the district court dismissed the second suit, and we affirmed the dismissal. There are no reported cases in which an attorney has been suspended or otherwise disciplined for violation of Rule 2.5. Local Rule 2.5 itself provides only that if counsel fails to make the called-for certification, the cases in question are to be consolidated by transfer, if the judges involved so determine.

the requirements of due process and fairness in attorney disciplinary proceedings, has misread the local rules of the Eastern District of Louisiana. I concur in the conclusion that remand is needed for a hearing on Thalheim's moral fitness to practice law. As to the two-year suspension, however, I would hold that the local rules do permit prosecution of disciplinary proceedings even after an investigating panel has recommended against imposition of discipline.

## I.

The majority is certainly correct that federal courts must abide by their own disciplinary rules when charging attorneys with ethical or rules violations. My reading of the local rules at issue indicates that the judges who wrote those rules have indeed abided by them. Moreover, *we* must abide, on appeal, by a rule of our own—the maxim that "[c]ourts have broad discretion in interpreting and applying their own local rules adopted to promote efficiency in the court." *Matter of Adams*, 734 F.2d 1094, 1102 (5th Cir.1984) (citing *Martinez v. Thrifty Drug & Discount Co.*, 593 F.2d 992 (10th Cir.1979)).

Although *Matter of Adams* addresses a bankruptcy rule, it is broadly applicable to all local court rules. *Adams* construes 28 U.S.C. § 2071, which authorizes courts to adopt local rules generally, not only bankruptcy rules. Citing *Lance, Inc. v. Dewco Services, Inc.*, 422 F.2d 778, 783 (9th Cir. 1970), we noted in *Adams* that "[w]hen the tribunal which has promulgated a rule has interpreted and applied the rule which it has written, it is hardly for an outside person to say that the author of the rule has misinterpreted it.... Accordingly, considerable deference is accorded to the district court's interpretation and application of its own rule" (citing *Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir. 1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981)).

The panel majority, to the contrary, does not appear to acknowledge any rule of deference to the district judges who wrote the rule. In its discussion of the appropriate standard of review, the court rejects a clearly erroneous standard and, in stating that "[t]he only matters before us are questions of law," appears to adopt here a *de novo* standard. *Adams*, however, instructs us that "[w]e may reverse only where we are convinced that the district court has misconstrued its own rules." 734 F.2d at 1102. Hence, the majority opinion appears to have overlooked the principle, consistent with *Adams*, that "we normally defer to a district court's construction of its own rules...." *John v. Louisiana Board of Trustees*, 757 F.2d 698, 707 (5th Cir.1985).

## II.

A fair reading of the local rules of the United States District Court for the Eastern District of Louisiana is that the district judges abided by the rules in suspending Mr. Thalheim, except for the failure to make a specific finding of moral unfitness to practice law. At the very least, even if an alternative reading is possible, we are bound by the *Adams* and *John* decisions to defer to the interpretation, by the district judges, of the rules which they wrote.

As the majority suggests, the validity of the district judges' action hinges on the meaning and interpretation of Local Rule V(C)(3). Specifically, the question is whether that rule permits prosecution of a disciplinary action where the panel contemplated by Rule V(B) issues a Rule V(C)(1) report that does not recommend institution of disciplinary proceedings. My reading of the rules is that at the option of the district court, the disciplinary action, in such an instance, still may go forward.

The structure of the rules in this regard is logical and straightforward. Rule V is entitled "Disciplinary Proceedings." Rule V(A) provides generally that disciplinary matters are under the control of the chief judge and subject to final action by a majority of the active judges. Rule V(B) calls for the appointment of a standing committee of attorneys from which panels are chosen to investigate the violations described in Rules I(F) and IV.

Rule V(C) then determines the procedure for utilizing the panels established by Rule

V(B). In shorthand form, Rule V(C) establishes the following scenarios:

Rule V(C)(1): The panel investigates and makes its recommendation.

Rule V(C)(2): If the panel recommends the institution of formal disciplinary proceedings, the district court *shall* designate an attorney to initiate and prosecute disciplinary proceedings.

Rule V(C)(3): Even if Rule V(C)(2) does not *require* prosecution (i.e., because the panel did not recommend in favor of discipline), the court *may* still designate an attorney to prosecute.

This reading of the rules is logical, consistent, and complete: Under Rule V(C)(2), the court *must* proceed with disciplinary proceedings if the panel so recommends. Under Rule V(C)(3), even if the panel does not so recommend (or no panel has been appointed), the court still has the option to proceed.

The majority has proffered a completely contrary interpretation of the purpose of Rule V(C)(3): that it is triggered not when the attorney panel fails to recommend discipline for infractions encompassed by Rules I(F) and IV, but only when discipline is needed for infractions *other than* those enunciated in Rules I(F) and IV. Even if no deference were due the district judges in adopting one interpretation over another, the majority's interpretation could not stand because it (inadvertently) confuses two distinct procedures: (i) appointing, according to the terms of Rule V(B), an investigatory panel; and (ii) designating, under Rule V(C), an attorney to "initiate and prosecute" disciplinary action once such investigation, if any, has been completed.

Properly read, Rule V(B) deals with investigation (not prosecution) and divides alleged ethical violations into two camps: (a) transgressions of Rules I(F) and IV, and (b) all other unethical conduct. Under Rule

V(B)'s terms, the district court will only rarely fail to appoint an investigative panel when it suspects an attorney has violated either Rule I(F) or Rule IV.[1] And since Rule V(B) silently fails to forbid the court from designating similar panels to investigate other attorney misconduct, it implicitly allows the court to follow such a procedure in regard to those violations, as well.

Rule V(C), on the other hand, describes procedures *to prosecute*, rather than *investigate*, alleged ethical transgressions. Parts (1) and (2) of Rule V(C) assume that a panel has been appointed to investigate the alleged misconduct, *and* Part (2) assumes that the panel has recommended prosecution. Together, these parts *require* the district court to designate an attorney to prosecute alleged disciplinary proceedings when an investigatory panel has so recommended. Part (3) covers "*any* case in which these rules do not require designation of counsel to initiate a disciplinary proceeding ..." (emphasis added).

Despite the evident distinction between the scopes and functions of Rules V(B) and V(C), the majority erroneously reads the language of V(B) into V(C):

The import of Rule V(C)(3) is that in cases where the rules do *not* require designation of counsel to initiate a disciplinary proceeding, namely, types of cases *other than* those enumerated under Rules I(F) and IV [footnote omitted], the court may designate counsel to prosecute the proceeding if it determines that such appointment is necessary. [Majority's emphasis.]

The majority's error is in assuming that Rule V(C)(3) applies only when no panel exists because the infractions stem from rules other than Rule I(F) or Rule IV. In reality, though, Rule V(C)(3) by its very terms applies when no panel exists *or* when

1. The majority is incorrect in stating that all infractions listed in Rules I(F) and IV "require referral to an attorney panel for recommendation." The second sentence of Rule IV(B), which is omitted in the majority opinion, reads: "However, should a majority of the judges of the Court determine, upon their investigation of any complaint or allegations of misconduct, other than conviction of crime, that such conduct even if substantiated would not warrant disciplining the attorney who is the subject of the complaint, such complaint or allegations of misconduct shall not be referred to an investigatory panel and shall be disposed by the Court [sic] in such manner and with such formality as it deems appropriate." This flaw is of critical significance, since it is a misinterpretation that underlies the majority's entire analysis.

an extant panel has recommended against prosecution. Again, the critical distinction (and confusion) is between (i) referral to a panel, which then investigates, and (ii) designation of an attorney to initiate and prosecute a disciplinary action *once an investigation has been completed.* [2] The rules are designed to treat Rules I(F) and IV differently from the other rules at the *investigation* stage; the majority, however, treats them differently at the *prosecution* stage, and does so by misusing Rule V(C)(3). This is the majority's fundamental error.[3]

I return, then, to the pivotal question: What does Rule V(C)(3) mean when it refers to "any case in which these rules do not require designation of counsel to initiate a disciplinary proceeding"? As I have shown, that phrase cannot mean, as the majority concludes, types of cases other than those encompassed by Rules I(F) and IV, since Rule V(B)—which is the rule cited by the majority as setting Rules I(F) and IV apart for separate treatment—deals with designation of a panel to *investigate* and has absolutely nothing to do with Rule V(C)(3)'s scope, which is designation of counsel to *initiate* (i.e., prosecute) a disciplinary action.

So Rule V(C)(3) cannot have the meaning which the majority ascribes to it. Yet it must have some purpose and meaning. In construing the rule we are bound by the principle, which the majority acknowledges, "that a statute should be construed so that each of its provisions is given its full effect" and that "[i]nterpretations that render parts of a statute inoperative or superfluous are to be avoided."

The interpretation of Rule V(C)(3) which I have set forth above, and which permits a disciplinary action to proceed even in the face of a contrary recommendation by the investigating panel, meets these standards and makes perfectly good sense. It is also the only interpretation that is consistent with the *placement,* or location, of Rule V(C)(3) within the local rules. If, *arguendo,* Rule V(C)(3) were intended to refer to the distinction between Rule I(F) and IV infractions, on the one hand, and other infractions, on the other hand, it logically would have been inserted immediately after, or would have been made a part of, Rule V(B); making it a subpart of Rule V(C) would have made absolutely no sense.

Rule V(C)(3) does make sense only if given the meaning which I have explained above and only if placed (as indeed the district judges placed it) as a subpart of

**2.** It is possible that the majority's misreading of Rule V(C)(3) stems from a misapprehension of the word "initiate" as used in the Eastern District rules. In those rules, "initiate" is synonymous with "prosecute." (*See, e.g.,* Rule V(C)(2), "initiate and prosecute.") Thus, "initiate" does not refer to the incipiency of a disciplinary matter, whose earliest stage normally consists of investigation. The majority's misreading of Rule V(C)(3) can be explained if one assumes that it read "initiate" to mean "investigate" rather than "prosecute."

**3.** Despite the error, the majority attempts to buttress its analysis by emphasizing Rule V(D), which it describes as "crucial." But the majority's reading of Rule V(D) would make the first portion of that rule superfluous, for Rule V(C)(2) already requires the court to designate counsel to prosecute a disciplinary proceeding. The only purpose of Rule V(D) is to establish a procedure for that prosecution and not per se to state when a prosecutor is required to be appointed. The critical language does not appear in the majority opinion; the rule reads in its entirety:

Before any final discipline is imposed for any misconduct to which the provisions of Rule I(F) and IV relate, a disciplinary proceeding shall be instituted by counsel designated for such purpose in which the respondent-attorney shall be ordered by the Court to answer and show cause, in writing, within 30 days after service of such order upon the respondent, personally or by mail, why final discipline, required by these rules and the findings of the Court, consisting of disbarment or other lesser sanctions, should not be imposed. Thus, the meaning and purpose of Rule V(D) is that no attorney can be disciplined for a Rule I(F) or Rule IV violation except by prosecution by court-appointed attorney and in accordance with the procedures set forth in the rule. (These show-cause procedures apparently were followed in the case of Mr. Thalheim.) Under Rule V(C)(3), the court has the option of imposing discipline even in the absence of a panel recommendation. The import of Rule V(D) is that the court cannot impose any such discipline for violations of Rule I(F) or IV without finally appointing a prosecutor and requiring the giving of notice.

Rule V(C). The trilogy of Rule V(C), then, is logical, consistent, and clear. Part 1: The court-appointed panel investigates and recommends.[4] Part 2: If the panel recommends discipline, the court must appoint a prosecuting attorney. Part 3: If the panel does not recommend discipline (or does not exist), so that the court is not *required* to appoint a prosecuting attorney, it may do so anyway, if it wishes. This interpretation, moreover, is not only logically consistent and is compelled by the plain wording of the rule, but is also supportive of the proposition that the courts retain, in the end, the inherent power to control and direct discipline against attorneys practicing before them.

### III.

I have acknowledged the principle that courts must follow their own disciplinary rules. I have indicated, *infra*, that the judges of the Eastern District of Louisiana did so in regard to Mr. Thalheim—that the rules permitted them to pursue discipline against Thalheim despite the apparent absence of a recommendation for discipline from the investigating panel. But it might nevertheless be argued that even if such a reading of Rule V(C)(3) is technically correct, it is unfair to apply it to Mr. Thalheim because the rule is not absolutely clear and does not state as directly as it might that if the panel recommends against discipline, the court shall still have the option to pursue discipline.

The suggestion might be, in other words, that since disciplinary rules are in the nature of penalties, they should be strictly construed, in order that attorneys subjected to those rules should be unequivocally on notice as to what the rules are before being penalized pursuant to them. But the fact is that Rule V(C)(3) is not one of the rules that tells Mr. Thalheim and other attorneys in the Eastern District which actions on their part can subject them to

disciplinary action. Rule V(C)(3) is a procedural rule that is implemented only after a disciplinary infraction has occurred. Thus, Mr. Thalheim can claim no prejudice from a reading of the rule that permits the disciplinary process to go forward; he can assert no detrimental reliance on the rule at issue in this case.

### IV.

Finally, although I agree with the majority that Local Rule IV(B) requires a specific finding of moral unfitness to practice law, and that the requisite finding has not been made, I disagree with the majority's suggestion, or at least implication, that from the facts of this case the judges of the Eastern District of Louisiana could not reasonably have found Mr. Thalheim morally unfit to practice law.

In summary, Richard Thalheim, Jr., is a bad actor in the state and federal courts of Louisiana. Here, he was charged with, among other things, misrepresenting facts to three different federal district judges and with repeatedly failing to disclose matters which the local rules require him to disclose. It is clear from the record that Thalheim used and abused disclosure and selective non-disclosure as a tactic to promote his and his clients' interests in litigation. It is difficult to understand why the majority apparently does not believe that on the basis of those facts the local district judges could reasonably conclude that Thalheim has demonstrated moral unfitness.

At oral argument, Thalheim's attorney abandoned his client's appeal of his three-month Eastern District suspension that was based upon the disciplinary proceedings before the Louisiana Supreme Court. That abandonment is welcome, for the facts of the state supreme court action easily would support a finding of moral unfitness.[5]

As to the two-year suspension, I am hard-pressed to accept the proposition that

---

4. The use of the word "recommendation" in Rules V(C)(1) and V(C)(2) is instructive. It tells us that the panel's action is not in the nature of a prerequisite to prosecution (such as an indictment) but is only, plain and simply, an advisory "recommendation."

5. The facts of Thalheim's conversion of client funds are as follows: On or about February 1, 1985, Thalheim received a settlement check for $49,493.60, payable to himself and his client, which he deposited into his office operating account. The client was promised that it would

the federal judges in the district could not decide, on the basis of the facts underlying that suspension, that Mr. Thalheim is morally unfit to practice law. At the very least, the district judges should be given the opportunity to make that determination, following a hearing on remand, and subject of course to our further review. Since we do not know what evidence would be adduced at such hearing on the issue of moral unfitness, we should not guess at this point that the evidence would be "scanty" or insufficient.

The majority opinion here suggests that it would require "more egregious misconduct" than Thalheim's to establish moral unfitness.[6] This *dictum* will be an unwelcome signal indeed to the district judges throughout the three states in this circuit who now may feel that they cannot suspend attorneys unless their conduct is even more serious than the violations of the local rules with which attorney Thalheim has been charged.[7] Indeed, the majority opinion offers little in the way of support or encouragement to our Article III colleagues who are responsible for maintaining efficient management and ethical standards in our federal district courts. I respectfully dissent.

take ten days for the check to clear. Instead, between February 15 and March 15, 1985, the client placed 23 long-distance telephone calls to Thalheim's office, trying unsuccessfully to get his money.

The client complained to the Louisiana Bar Association. Thalheim received notice of the complaint on March 25, 1985, and on April 1, 1985, borrowed $35,100.00 from his mother and, on the same day, disbursed $24,238.43 to the client. At that time, Thalheim's office operating accounts showed a blance of only $7,566.79. Moreover, Thalheim charged that same client $1,000.00 more than the allowed statutory fee; he refunded it only after being contacted by a bar association committee.

6. In fairness to the majority, I should note that this assertion refers only to Thalheim's federal-court transgressions and not to his misdeeds in state court regarding misuse of a client's money.

7. Although it does not, and should not, have any impact upon the instant appeal, I note that the Louisiana Supreme Court and Eastern District

of Louisiana disciplinary proceedings are not the only times Mr. Thalheim has run afoul of court rules. As recently as May 1988, as counsel of record in *Fournier v. Petroleum Helicopters, Inc.,* 845 F.2d 1020 (5th Cir.1988) (*mem.*), *aff'g* 665 F.Supp. 483 (E.D.La.1987), Thalheim violated Fed.R.App.P. 35(a), Fifth Cir. Loc. Rules 35.2.2 and 35.2.4, and the statement in the Internal Operating Procedure note under Local Rule 35. Thalheim was ordered to show cause why sanctions should not be imposed upon him for the violations. His primary excuse was that his office copy of the local rules was out-of-date; the panel determined that no sanctions should be assessed. While the *Fournier* incident does not reflect moral unfitness, it underscores the fact that recently in three different courts—the Louisiana Supreme Court, the Eastern District of Louisiana, and this circuit—Mr. Thalheim has shown either an unwillingness or an inability to abide by the rules which other attorneys are expected to follow. Although he is entitled to due process and to having the courts abide by their own rules, he is hardly entitled to sympathy.