**In the Matter of: SEALED APPELLANT, Appellant.**

**No. 98–31006.**

United States Court of Appeals, Fifth Circuit.

Nov. 11, 1999.

Kyle D. Schonekas (argued), Schonekas, Evans & McGoey, Joelle F. Evans, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, LA, William Gardere Cherbonnier, Jr., Harvey, LA, for Appellant.

Before POLITZ, HIGGINBOTHAM and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

Stephen F. Hurstell, an attorney at law, appeals an order disbarring him from practice in the United States District Court for the Eastern District of Louisiana. Hurstell contends that the district court denied him due process, erred in interpreting and applying the Louisiana Rules of Professional Conduct, and abused its discretion by resorting to the extreme sanction of disbarment. For the reasons assigned, we affirm.

## BACKGROUND

In December 1996, Chief Judge Sear received a letter from Loretta Argrett, Assistant Attorney General for the Tax Division of the Department of Justice, charging that Stephen Hurstell engaged in professional misconduct in connection with cases in that court, namely *The Adrian Le Boeuf, Sr. Family Trust v. United States*[1] and *Le Boeuf v. Richard v. United States*.[2] The letter stated that Hurstell backdated the endorsement of a stock certificate to reflect an earlier transfer of the certificate from a client, Adrian Le Boeuf, to the client's trust, Le Boeuf Family Trust. The letter also stated that Hurstell lied or was deliberately misleading under oath when deposed by the government about the date of the endorsement.

The stock certificate in question was for shares in Gulf South Marine Transportation, Inc., a tug-boat company in which Le Boeuf owned a one-half interest. In 1987, Le Boeuf pled guilty to smuggling marihuana aboard vessels owned by his company and consulted Hurstell about an IRS tax audit. In an effort to shelter Le Boeuf's assets before any IRS assessment was made, Hurstell set up a trust for Le Boeuf dated September 1, 1987. Hurstell used two authentic form donations in his effort to transfer Le Boeuf's property— the shares in Gulf South and some immovable property—into the trust. The text of the forms did not specifically identify the property to be donated. For the form dealing with the immovable property, an Exhibit A was attached that was incorporated by reference and described the immovable property. For the form that purportedly dealt with the stock, an Exhibit A was incorporated by reference but no Exhibit A was attached. Though a copy of the front of the Gulf South certificate was attached,[3] there was no notation that it was Exhibit A.

In 1989, the IRS fixed Le Boeuf's assessment at over $100,000. In 1991, Le Boeuf filed for bankruptcy and received a discharge of his federal tax liability for penalties and interest. Neither the stock nor the immovable property was listed as an asset in Le Boeuf's bankruptcy schedules.

---

1. No. 95–1913 (E.D.La.1995).

2. No. 95–2597 (E.D.La.1995).
 A similar letter was forwarded to the Louisiana State Bar's Office of Disciplinary Counsel. Recently, Hurstell was transferred to disability inactivity status of the state bar. All pending disciplinary proceedings against

Hurstell instituted by the state have been held in abeyance. *In re Hurstell,* 733 So.2d 1179 (La.1999).

3. A copy of the back of the stock certificate was not included. The back of the certificate included text enabling an owner to assign or transfer ownership thereof.

In March 1995, Hurstell, on behalf of the trust, sought to inspect Gulf South's books and records. The company refused, contending that the trust was not the record owner. Le Boeuf joined the suit as the record owner. The suit was settled by a consent order requiring the trust to produce the original trust document, the original donation, and the original stock certificate. Gulf South informed an IRS collection officer that Le Boeuf was the owner of the stock, and the IRS attached the stock certificate on the theory that Le Boeuf owned the stock in 1989, making it subject to the IRS's levy or, alternatively, that if there was a transfer of stock, it was subject to revocation.

In June 1995, the trust filed suit against the United States in the Eastern District of Louisiana, alleging wrongful levy on the trust's Gulf South stock. In the complaint, the trust asserted that "[s]aid shares of stock were endorsed over to the Adrian Le Boeuf, Sr. Family Trust on September 1, 1987." Attached to the complaint was an affidavit signed by Hurstell in which he swore that the factual assertions of the complaint were accurate, true, and complete to the best of his knowledge, information, and belief. In September 1995 an attorney with the Tax Division of the DOJ deposed Hurstell as a witness to the relevant documents. When questioned about the execution of the stock transfer, Hurstell testified that, to the best of his recollection, he signed the back of the certificate in the presence of Adrian Le Boeuf on September 1, 1987. Before the deposition took place, the National Forensic Laboratory of the IRS performed an ink analysis that established that Hurstell signed the back of the stock certificate in ink not manufactured until 1994.

Confronted with the ink analysis, Hurstell conferred with Le Boeuf, who reminded him that Hurstell had completed the back of the stock certificate sometime in 1995 to comply with the consent order. Hurstell's attorney wrote to the DOJ and explained that Hurstell's recollection was refreshed and that his deposition testimony may have been unintentionally confusing or inaccurate. Hurstell's counsel explained that the endorsement on the stock certificate may not have been signed by Hurstell on September 1, 1987, but, rather, at a later date. Hurstell's counsel offered to have him redeposed. In response, the DOJ filed the complaint letter that initiated disciplinary proceedings.

The district court, acting *en banc,* voted unanimously that the complaint should be docketed and allotted. The case was allotted to Judge Vance who appointed George Domas to investigate the disciplinary complaint and to issue a report as required by Rule III.B.1 of the Eastern District's Rules of Disciplinary Enforcement. Hurstell was served with copies of the complaint letter and the order noting that the disciplinary complaint would be investigated by Domas. After completing his investigation, Domas filed a report concluding that Hurstell's backdating conduct violated Rule 4.1(a)[4] and Rule 8.4(c)[5] of the Louisiana Rules of Professional Conduct. According to the report, the evidence was inconclusive as to whether Hurstell lied or was deliberately misleading under oath concerning the date of the transfer of the stock certificate.

The full court reviewed the report and voted unanimously that Hurstell should be served a copy thereof and should be ordered to show cause as to why he should not be disciplined. Hurstell requested a hearing and filed a written response addressing both charges—the backdating of the endorsement of the stock certificate and the lying or being deliberately misleading while under oath.

**4.** "In the course of representing a client a lawyer shall not knowingly ... [m]ake a false statement of material fact or law to a third person...." Rule 4.1(a).

**5.** "It is professional misconduct for a lawyer to ... [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation...." Rule 8.4(c).

Hurstell admitted at the disciplinary hearing that he did not attach the original stock certificate to the original donation, and that he did not complete the stock transfer form on the back of the original stock certificate at the time the donation was signed. He explained that he prepared two separate donations because he did not want everyone to know Le Boeuf's business, and that a donation of stock did not require recordation to affect third parties. The stock certificate was not presented to the company, and Le Boeuf's name remained on the company books until 1995.

Hurstell's principal defenses were that backdating the endorsement was immaterial because all that was legally necessary to accomplish the donation was an act of donation in authentic form, and that he had a memory lapse when he gave the incorrect testimony at his deposition. He also advanced his psychiatric problems and alcoholism as mitigating factors, stating that, when he was under the influence of alcohol, he sometimes had memory lapses and blackouts. He did not testify that he was under the influence of alcohol either when he executed the document in issue in 1995 or when he gave his deposition.

The district court determined that there was clear and convincing evidence that Hurstell violated Rules 4.1(a) and 8.4(c), finding that his conduct in backdating the endorsement of the stock certificate was a material misrepresentation and that his "refreshed" memory was the product of being confronted by the ink analysis. The court also found that Hurstell was intentionally deceptive when responding to questions during his deposition. The court was unpersuaded by Hurstell's mitigating evidence and rejected his constitutional claims of denial of due process. Meeting *en banc,* the judges of the district court voted unanimously to disbar Hurstell from practicing before it. Hurstell timely appealed.

## ANALYSIS

### Standard of Review

Disbarment cases are quasi-criminal proceedings, and any disciplinary rules employed to impose disbarment must be strictly construed, resolving ambiguities in favor of the attorney charged.[6] A federal court may disbar an attorney only upon presentation of clear and convincing evidence sufficient to support the finding of one or more violations warranting this sanction.[7] We review *de novo* whether an attorney's conduct is subject to sanction.[8] A district court's imposition of a particular sanction is reviewed for an abuse of discretion.[9] A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.[10]

### Due Process

An attorney subject to disciplinary proceedings is entitled to due process.[11] Hurstell contends that the district court denied him procedural due process by failing to provide him notice of the specific charges against him, and by failing to find specifically that he was not morally fit to practice.

First, Hurstell maintains that he was not given adequate notice that he was under investigation for the alleged backdating of the stock certificate. He cites the letter of complaint, which states that

6. *In re Thalheim,* 853 F.2d 383 (5th Cir.1988).

7. *Id.* at 389 n. 9; *NASCO, Inc. v. Calcasieu Television & Radio, Inc.,* 894 F.2d 696 (5th Cir.1990), *aff'd* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

8. *United States v. Brown,* 72 F.3d 25 (5th Cir.1995).

9. *Id.*

10. *Id.*

11. *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *In re Medrano,* 956 F.2d 101 (5th Cir.1992).

"*one* of the instances of misconduct occurred in connection with cases pending in this court." And, according to Hurtsell, the one instance of misconduct that occurred in connection with cases pending in that court and about which he was on notice was his deposition testimony, testimony determined by the investigative counsel to be neither false nor deliberately misleading.

The record is replete with evidence that Hurstell was on notice of the backdating allegation. The letter of complaint—a copy of which was forwarded to Hurstell—noted two instances of misconduct, "first in backdating the stock certificate and second in lying or being deliberately misleading under oath when questioned about the date of the transfer." Hurstell does not contend that the backdating misconduct could not serve as a basis for disciplinary action in the district court. Further, the Report of Investigating Counsel—a copy of which was given to Hurstell—addressed the two instances of misconduct.

Hurstell's very submissions belie his assertion of inadequate notice. For example, in his response to the show cause order, Hurstell referred to the disciplinary complaint letter and summarized the two charges. In a section entitled "The Allegations of Misconduct," Hurstell responded to the backdating allegation as well as the other allegation. In addition, during the hearing Hurstell introduced documents, testimony, and mitigating evidence to address both allegations. Finally, the

district court noted that Hurstell neither asked for clarification nor raised the alleged lack of notice until after the hearing. The claim of lack of notice is rejected.[12]

■ Second, Hurstell maintains that the district court departed from precedent by imposing the sanction of disbarment without making a specific finding that he was morally unfit to practice. As the precedent on which Hurstell relies interpreted a rule no longer in effect,[13] it appears that Hurstell cites the authority for the proposition that any sanction imposed under a district court's inherent power must be preceded by a specific finding that an attorney's conduct constituted bad faith. Hurstell is correct in that the words "bad faith" do not appear in the district court's order. Though we previously have remanded for a determination whether a finding of bad faith is appropriate, despite a clear indication of the district court's displeasure with the attorney's conduct, we do not do so here.

■ Courts have long recognized an inherent authority to disbar attorneys.[14] When acting under an inherent power to disbar an attorney, a district court must make a specific finding that an attorney's conduct "constituted or was tantamount to bad faith."[15] When bad faith is patent from the record and specific findings are unnecessary to understand the misconduct giving rise to the sanction, the necessary finding of "bad faith" may be inferred.[16]

---

**12.** *City of West Covina v. Perkins*, 525 U.S. 234, 119 S.Ct. 678, 681, 142 L.Ed.2d 636 (1999) ("A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful.").

**13.** *In re Thalheim*, 853 F.2d at 389 (interpreting Rule IV(B) of the Eastern District's Disciplinary Rules (1987) ("violation be of sufficient gravity as to evidence a lack of moral fitness for the practice of law")).

**14.** *In re Snyder*, 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) (citing *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366

(1866) and *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 6 L.Ed. 152 (1824)).

**15.** *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

**16.** *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir.1999) (despite absence of finding of bad faith, reviewing the record to determine whether such a finding was warranted); *Crowe v. Smith*, 151 F.3d 217 (5th Cir.1998) (holding as sufficient to constitute a finding of bad faith a district court's finding that defendants had engaged in a conspiracy to willfully defraud a party by concealing information

■ Here, the district court's order stated that, with respect to the charge that he lied or was deliberately misleading while under oath, "Hurstell clearly was intentionally deceptive," and with respect to the other charge, Hurstell "backdated the stock certificate." Given that a district court can use its inherent power to disbar an attorney for attempting to induce a witness to testify falsely under oath,[17] it manifestly follows that a district court can use its inherent power to disbar an attorney who testifies falsely under oath. The district court's finding that Hurstell testified falsely or was deliberately misleading while under oath is a finding "tantamount to bad faith"[18] that supports its order disbarring him from practice before that court. The district court's finding that Hurstell also backdated the endorsement of the stock certificate bolsters this conclusion. We perceive no error whatsoever.

### Violation of Rules 4.1(a) & 8.4(c)
#### Backdating the Endorsement
#### of the Stock Certificate

■ Hurstell contends that the district court erred in concluding that backdating the stock certificate was a *material* representation violative of Rules 4.1(a) and 8.4(c). He maintains that the transfer of the Gulf South stock was effected by an authentic act of donation on September 1, 1987 and that the subsequent endorsement was *immaterial* to the claim of ownership. He claims he was justified in backdating the certificate because September 1, 1987 was the day that the transfer was legally

made. The district court found that the substantive requirements of donation—divestment of shares and donative intent—were not fulfilled. Further, the trial court determined that the endorsement of the stock certificate was material to the dispute between the trust, Le Boeuf, and the government.

Our review of the record and briefs persuades that the district court did not err in its conclusion that Hurstell violated Rules 4.1(a) and 8.4(c). The intent to donate the stock was not established. Evidence preponderates to the contrary. There was no transfer of title for the administration thereof for the benefit of another.[19] There was no divestment, the trustee never received the stock certificate, could not recall ever seeing it, and did not know it was part of the trust res. Ownership of the stock was not changed on the corporate books.

Further, Hurstell contends that the backdating of the stock endorsement was not material. The date of the transfer of the stock was being litigated in Le Boeuf's suit against the government and Hurstell's misrepresentation spoke directly to this issue. The same representation was contained in a complaint filed on behalf of the trust in 1995. Hurstell's affidavit accompanied this complaint. In short, the district court did not err in its conclusion that clear and convincing evidence supported its determination that Hurstell violated Rules 4.1(a) and 8.4(c) of the Louisiana Rules of Professional Conduct.[20]

despite a known duty to disclose), *cert. denied,* 119 S.Ct. 2047 (1999); *Primus Automotive Fin. Servs., Inc. v. Batarse,* 115 F.3d 644 (9th Cir.1997); *cf. LaPrade v. Kidder Peabody & Co., Inc.,* 146 F.3d 899, 905–06 (D.C.Cir.1998) (assuming a finding of bad faith were required for the imposition of sanctions under 28 U.S.C. § 1927, it would be "empty formalism" to find an abuse of discretion for failure to "invoke the magic words 'bad faith' " when sufficient evidence in the record supported such a finding), *cert. denied,* — U.S. —, 119 S.Ct. 804, 142 L.Ed.2d 664 (1999).

**17.** *Resolution Trust Corp. v. Bright,* 6 F.3d 336 (5th Cir.1993); *In re Thalheim,* 853 F.2d at 390.

**18.** *Roadway Express, Inc.,* 447 U.S. at 767; *see also Crowe,* 151 F.3d at 239 (holding that district court's finding that attorney "knowingly and deliberately made blatantly incorrect discovery responses" suffices as a finding of bad faith).

**19.** La.Rev.Stat. Ann. § 9:1731.

**20.** *In re Quaid,* 646 So.2d 343 (La.1994) (finding to be a violation of Rule 8.4(c), *inter alia,*

As to the claimed memory lapse and mitigating evidence, Hurstell has failed to persuade either the district court or this court. There is no testimony that Hurstell was under the influence of alcohol or medication at any pertinent time herein.

*Sanction*

 Hurstell contends that, even assuming that the district court correctly determined that clear and convincing evidence supported the conclusion that he violated Rules 4.1(a) and 8.4(c), disbarment was an excessive sanction.[21] First, Hurstell insists that, when the result of a wrong is "more potential injury than traceable actual injury,"[22] a sanction less severe than disbarment is warranted. He claims that the government was not harmed by his mistaken deposition because it knew the results of the ink analysis, and he maintains that within a month of the deposition his counsel sent a letter to the DOJ acknowledging the mistake. Second, Hurstell maintains that the district court failed to consider, or accorded inadequate weight to, his mitigating evidence—his alcoholism, his manic-depression, and the absence of a prior disciplinary record.

The question before us is not whether we would disbar Hurstell but, rather, whether the district court abused its discretion in doing so. We conclude that it did not. The disciplinary rules of the Eastern District of Louisiana allow for the disbarment of an attorney whose acts or omissions violate its rules or the Louisiana Rules of Professional Conduct. These disciplinary rules do not, however, provide further guidance as to when the extreme sanction of disbarment should be imposed. For direction on similar inquiries, the Louisiana Supreme Court has looked to the ABA's Standards for Imposing Lawyer Sanctions.[23] We do likewise.

 In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors.[24] Hurstell challenges the suggestion that *actual* and *potential* injury could be treated similarly. In creating its standard, the ABA plainly rejected what Hurstell proposes. That no actual injury occurred may serve as mitigation, as was the case in the precedent relied upon by Hurstell. In determining the baseline disci-

an attorney's material false statements in documents submitted to the Social Security Administration); *In re Stephens*, 645 So.2d 1133 (La.1994) (per curiam) (finding to be a violation of Rules 4.1(a) and 8.4(c) an attorney's notarization and filing of a forged affidavit); *Louisiana State Bar Ass'n v. Boutall*, 597 So.2d 444, 445 (La.1992) ("[An attorney] violate[s] Rules 4.1(a) and 8.4(c) by making a false affidavit. Executing a false affidavit is a serious breach of ethics, which directly affects the practice of law and calls into question his abilities to discharge his professional duties.") (internal quotes and citations omitted); *Louisiana State Bar Ass'n v. Harrington*, 585 So.2d 514 (La.1990) (finding to be a violation of Rule 4.1(a) an attorney's false statements of fact to opposing counsel and to an opposing party).
 Further, other grounds support the district court's order. Both the investigative report and the district court's order reflect that, despite having attested that Le Boeuf endorsed the stock certificate in his presence, Hurstell

did not witness the endorsement. Employing Rule 4.1(a), the Louisiana Supreme Court has sanctioned an attorney for falsely attesting to a signature. *In re Wahlder*, 728 So.2d 837 (La.1999) (sanctioning attorney for attesting to the validity of a signature attributed to a wife but written by her husband).

21. According to Rule VI(B) of the Eastern District's Disciplinary Rules, "[a]n attorney who has been disbarred after hearing ... may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment...."

22. *In re Vaughn*, 660 So.2d 1202, 1203 (La. 1995) (per curiam).

23. *In re Quaid*, 646 So.2d at 350–51.

24. ABA Standard for Imposing Lawyer Sanctions (ABA Standard) 3.0; *In re Quaid*, 646 So.2d at 350 (citing ABA Standard 3.0).

pline, however, the distinction between actual and potential injury need not be made.[25]

The power of disbarment is necessary to protect the public's confidence in the profession and the judicial system because a court implicitly represents that an attorney permitted to practice before it is in good standing to do so.[26] Disbarment is generally appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously, adversely reflects on the attorney's fitness to practice.[27] Hurstell violated ethical duties owed to the public, the profession, and the judicial system. By backdating the endorsement of the stock certificate and lying or being deliberately misleading under oath, Hurstell engaged in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on his fitness to practice. It follows that disbarment is the appropriate baseline disciplinary action.[28]

## CONCLUSION

For the foregoing reasons, the district court's order disbarring Hurstell is AFFIRMED. The motion to withdraw, review, and present under seal to the Bankruptcy Court for the Eastern District of Louisiana a transcript of the testimony before the district court that was filed by

25. Hurstell cannot seriously dispute this point. In his response to the show cause order, one of the *mitigating* factors that he listed was that "no one was harmed by [his] conduct."

26. *Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957).

27. ABA Standard 5.11(b); *see also In re Quaid*, 646 So.2d at 350 (citing ABA Standard 5.11).

28. *In re Quaid*, 646 So.2d at 350–51 (disbarring attorney for, *inter alia*, making material false statements in documents submitted to and testimony given before the Social Secu-

the beneficiaries of the Le Boeuf family trust is DENIED AS MOOT.

rity Administration); *see generally In re Caranchini*, 160 F.3d 420, 423 (8th Cir.1998) (affirming district court's order of disbarment following disbarment by state court for "intentionally submit[ting] a false document, intentionally ma[king] false statements, and intentionally withh[olding] material information"); *In re Poulakidas*, No. 96–3779, 1998 WL 67712, at *1 (7th Cir. Feb. 17, 1998) (unpublished) (affirming district court's order of disbarment following disbarment by state court for, *inter alia*, conduct involving dishonesty, fraud, deceit, or misrepresentation), *cert. denied*, —— U.S. ——, 119 S.Ct. 97, 142 L.Ed.2d 77 (1998).