972 So.2d 315 (2007)
In re Walter J. LeBLANC, Jr.
No. 2007-B-1353.
Supreme Court of Louisiana.
November 27, 2007.
Rehearing Denied February 1, 2008.
Charles Bennett Plattsmier, Baton Rouge, for applicant.
McCranie, Sistrunk, Anzelmo, Hardy Maxwell & McDaniel, Thomas P. Anzelmo, *316 Sr., Metairie, Walter J. LeBlanc, Jr., for respondent.

ATTORNEY DISCIPLINARY
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Walter J. LeBlanc, Jr., an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
In 2001, respondent represented the plaintiff in a Jones Act case, Temple v. Atwood Oceanics, Inc., that was randomly allotted to Division "C" of the 24th Judicial District Court for the Parish of Jefferson, Judge Alan Green presiding. Following a bench trial in March of that year, Judge Green rendered judgment on September 20, 2001 awarding the plaintiff $1.5 million in damages. Thereafter, the parties reached an agreement that the judgment would not be appealed. The judgment was satisfied by the defendant in a dismissal of the civil proceedings on February 4, 2002.
In March 2002, Judge Green telephoned respondent several times to request that he make a contribution to the campaign of his niece, Jalila Jefferson,[1] who was then running for a seat in the Louisiana House of Representatives.[2] On April 3, 2002, days before the general election, respondent went to Judge Green's office and gave him an envelope containing $800 in cash, which respondent intended as a contribution to Ms. Jefferson's campaign. The exchange of cash, as well as the conversation between respondent and Judge Green, was captured on videotape by the FBI in the course of its audio and video surveillance of Judge Green's office:
Respondent: Uhm, eight hundred, alright.
Judge Green: Alright.
Respondent: Uh and I haven't talked to Phil [referring to respondent's law partner]. Phil is in Disneyland coming back today and I'll have more for you.
Judge Green: Okay. Well election's Saturday.
Respondent: Oh it's this Saturday?
Judge Green: Yeah.
* * *
Judge Green: Yeah yeah so hopefully things go well.
Respondent: Yeah.
Judge Green: I won't be here but I'll be you know I'll be checking it on TV and on the phones.
Respondent: (Unintelligible)
Judge Green: Yeah sometimes I worry because a lot of folks don't realize you know that I'm very restricted as to what I can do.
Respondent: (Unintelligible)
Judge Green: Yeah I had to explain that to my son you know uh because he's doing a lot of campaign work for her and uh now he understands. And her father understands that's why he just made a little personal call to me and I've gotten some good response from some folks so at least you know she'll *317 know we were able to help her out a little bit. Appreciate [it] man.
Respondent: (Unintelligible)
This videotape was subsequently featured in Judge Green's trial on federal bribery and mail fraud charges.[3] As such, respondent's actions generated considerable adverse publicity for both himself and for the legal profession in Louisiana.
Upon request by Judge Green, respondent made another contribution to Ms. Jefferson's campaign during the subsequent runoff election. This contribution, in the amount of $1,000, was made in the form of a check from respondent's law firm dated April 24, 2002.
DISCIPLINARY PROCEEDINGS:
Following its investigation, the ODC filed one count of formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(f) (knowingly assisting a judge in conduct that is a violation of applicable Rules of Judicial Conduct or other law).
Respondent answered the formal charges and generally admitted the factual allegations set forth therein. Respondent pointed out, however, that Judge Green's request for a campaign contribution was made more than six months after the entry of judgment in the Jones Act case subject of the formal charges, and that at no time did Judge Green "suggest, infer, or intimate any relationship between the decision entered in September 2001 and the request for a campaign contribution for his niece."[4] Respondent also admitted that in retrospect, he should not have assisted Judge Green in conduct that violated the Code of Judicial Conduct; however, he stated that he "was not mindful of the prohibition" at the time he made the campaign contribution. Respondent maintained that his "lapse was unintentional and in no way consciously made." Finally, respondent admitted the rule violations alleged in the formal charges.

Hearing Committee Report
This matter proceeded to a hearing in mitigation. Thereafter, the hearing committee filed its report with the disciplinary board. Two members of the committee recommended that respondent be suspended from the practice of law for one year, with six months deferred, while the third committee member recommended a one-year suspension, with no portion of the suspension deferred.
The hearing committee adopted the stipulated facts and acknowledged respondent's admission that he violated Rules 8.4(a), 8.4(d), and 8.4(f) of the Rules of Professional Conduct. After considering the evidence and testimony presented at the hearing, the committee rejected respondent's contention that his misconduct was negligent:

*318 Although there is no question in the mind of all the panel members that Mr. LeBlanc is a man of good moral character and a competent attorney, the panel does find that his assertion that he did not know the rule he was violating when he made a cash contribution to Judge Green is without merit. The videotape of April 3, 2002 clearly substantiates that both Judge Green and respondent knew the rule that they were violating and in fact discussed that the contribution that Mr. LeBlanc was making was outside the parameters of the rule. . . . The aforementioned videotape establishes actual knowledge.
Based on these findings, the committee determined that respondent's mental state was knowing;[5] therefore, the applicable baseline sanction is suspension under the ABA's Standards for Imposing Lawyer Sanctions.[6] In mitigation, the committee recognized the absence of a prior disciplinary record, absence of a dishonest or selfish motive, full and free disclosure to the disciplinary agency and a cooperative attitude toward the proceedings, good character and reputation, and remorse. The committee did not discuss in its report whether any aggravating factors are present.
The committee concluded:
The panel finds that the actions of the respondent were not the result of an act of omission or negligence. The respondent not only should have known that his actions were wrong but clearly did know they were wrong at the time that he made the cash payment to Judge Green. His conduct has become the subject of media attention and was also the subject of federal criminal proceedings against Judge Alan Green. Clearly, his conduct has reflected upon the public's perception of the legal community.
Under these circumstances, two members of the committee recommended that respondent be suspended from the practice of law for one year, with six months deferred. The third member of the committee recommended that respondent be suspended from the practice of law for one year.
Respondent filed an objection to the hearing committee's report and recommendation, arguing that the committee erred in finding his misconduct was knowing. Respondent asserted that the appropriate sanction for his negligent misconduct is a public reprimand or, at most, a fully deferred suspension from the practice of law. The ODC maintained its position that an actual period of suspension is warranted, and suggested that a period of one year and one day, which would necessitate respondent's filing an application for reinstatement, is appropriate for the knowing misconduct at issue.

Disciplinary Board Recommendation
The disciplinary board found the hearing committee's factual findings are not manifestly *319 erroneous and adopted same. Specifically, the board adopted the committee's finding that respondent's misconduct was "knowing." As the parties have agreed that respondent violated Rules 8.4(a), 8.4(d), and 8.4(f), the board agreed that the committee was correct in finding these rules were violated. Rule 8.4(f) prohibits a lawyer from knowingly assisting a judge in conduct that is a violation of applicable Rules of Judicial Conduct or other law. In this case, respondent made a contribution to the Jefferson campaign in response to Judge Green's solicitation of the contribution. In so doing, respondent assisted Judge Green in violating Canon 7(a)(1)(d) of the Code of Judicial Conduct. Respondent's conduct was also prejudicial to the administration of justice, in violation of Rule 8.4(d). By making prohibited contributions at the request of the judge, respondent ignored the Rules of Professional Conduct, the Canons of the Code of Judicial Conduct, and Louisiana campaign finance laws, which at the time provided that no cash contribution over $100 could be made to a candidate. Furthermore, the board agreed with the ODC's suggestion that respondent's behavior was largely motivated by his desire to keep Judge Green happy and to nourish an ongoing friendship and personal relationship, particularly in light of the fact that the judge had recently ruled in favor of respondent's client with a substantial verdict in a case that had substantial merit. Such conduct is prejudicial to the administration of justice in that it obstructs the proper function of the judicial process and erodes the public's trust in the legal profession and the judiciary.
The board found that respondent violated duties owed to the legal system and to the profession. His conduct was knowing, and actual harm to the reputation of the legal system and to the profession has occurred. The baseline sanction for respondent's misconduct is a period of suspension.
The board found the record supports the aggravating factor of substantial experience in the practice of law (admitted 1983). In mitigation, the board recognized the following factors: absence of a prior disciplinary record, absence of a dishonest or selfish motive, full and free disclosure to the disciplinary agency and a cooperative attitude toward the proceedings, good character and reputation, and remorse.
The board observed that there are no prior discipline cases involving misconduct similar to respondent's and in which a Rule 8.4(f) violation was found. However, the board noted that In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548, offers guidance in this matter. In Bolton, the attorney allegedly sought to give a judge a campaign contribution in return for special favor from the judge in a case pending in his court. The attorney approached the judge offering the campaign contribution, instead of the situation at hand, where the judge approached respondent asking for a contribution. Also, and very significantly, the campaign contribution in Bolton was later characterized as an alleged bribe. Here, no bribery charges have been alleged against respondent. Formal charges were brought against Bolton alleging, among other rule violations, a violation of Rule 8.4(f). Bolton filed an answer to the charges, denying any professional misconduct and maintaining there was a "substantial misinterpretation of his intentions, caused by his failure to properly articulate his wishes to [the judge] and his feelings to the Court."
In reviewing the matter, this court found that the hearing committee was not clearly wrong when it determined that Bolton did not intend to offer a bribe to the judge or otherwise influence the outcome *320 of the case. The court also commented on the importance of the hearing committee's findings in disciplinary matters.[7] The court then found that while Bolton's conduct was negligent, and not intentional, the record supported the conclusion that he engaged in ex parte communications with the judge, thereby creating an appearance of impropriety. Furthermore, Bolton's actions had the potential to cause actual harm to the administration of justice, even if he did not intend such a result. For Bolton's violation of Rules 8.4(a) and 8.4(d), the court determined that a one-year suspension from the practice of law was the appropriate penalty; however, considering the mitigating factors present, the court deferred six months of the suspension, subject to the requirement that Bolton complete Ethics School.
The board found that here, as in Bolton, great deference should be given to the hearing committee's determination concerning the intention and state of mind of respondent when he gave the campaign contribution to Judge Green for Ms. Jefferson's campaign. The committee had the opportunity to observe respondent during his testimony, whereas the board did not. Also like the Bolton matter, respondent has violated Rules 8.4(a) and 8.4(d); his conduct was prejudicial to the administration of justice. An additional rule violation is present in respondent's case, a Rule 8.4(f) violation. The hearing committee has recommended basically the same sanction as was imposed in Bolton, a one-year suspension with six months of the suspension deferred. The board agreed that this sanction is appropriate.
Accordingly, a majority of the board recommended that respondent be suspended from the practice of law for one year, with six months deferred. The board also recommended that respondent be assessed with all costs of these proceedings.
Four board members dissented, one in favor of a public reprimand and three in favor of a suspension of at least one year and one day.
Both respondent and the ODC filed objections to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

*321 DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on the stipulations and other evidence in the record, we find respondent knowingly assisted Judge Green in conduct that is a violation of the applicable Rules of Judicial Conduct and the campaign finance laws of this state. Such conduct is clearly prejudicial to the administration of justice. As respondent has admitted, there is clear and convincing evidence which establishes that he has violated Rules 8.4(a), 8.4(d), and 8.4(f) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Assisting a judge in a violation of the Code of Judicial Conduct is very serious misconduct by a lawyer. The baseline sanction for this knowing misconduct is a lengthy period of suspension.
In fashioning an appropriate sanction in this case, we recognize in mitigation that respondent has no prior disciplinary record in more than twenty years of practice, has a good reputation in the legal community, and has expressed genuine remorse.
Considering the totality of the circumstances, and taking into account all of the interests to be served by the lawyer disciplinary process, we conclude that the appropriate sanction for respondent's misconduct is a one year and one day suspension from the practice of law.

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Walter J. LeBlanc, Jr., Louisiana Bar Roll number 1800, be and he hereby is suspended from the practice of law for a period of one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
CALOGERO, C.J., and WEIMER, J., concur in part, dissent in part and assign reasons.
*322 CALOGERO, C.J., concurring in part and dissenting in part.
I concur in the majority's finding that Respondent's conduct violated the Rules of Professional Conduct. However, I dissent from the sanction imposed and would instead suspend Respondent from the practice of law for one year, with six months deferred.
WEIMER, J., concurring in part and dissenting in part.
The majority of the hearing committee and disciplinary board recommended that six months of the one year suspension be deferred, given the mitigating factors of absence of a prior disciplinary record, absence of a dishonest or selfish motive, full and free disclosure, a cooperative attitude toward the proceedings, good character and reputation, and remorse. The majority acknowledges that in more than twenty years of practice respondent had no prior disciplinary record, enjoys a good reputation in the legal community, and has expressed genuine remorse.
As noted by the majority and as conceded by the Office of Disciplinary Counsel, there is no direct evidence that would suggest or indicate the contribution given to Judge Green for the benefit of the Jefferson campaign was tied to any specific benefit. No bribery charges have been alleged against respondent.
The evidence indicates the respondent engaged in a one-time serious lapse of judgment at the request of a judge who he considered a good friend and who was a former colleague when they served as assistant district attorneys. He has admitted his mistake and his remorse has been sincere.
Further, respondent fully cooperated with the office of the United States Attorney in its investigation of Judge Green. An Assistant United States Attorney expressed his appreciation for respondent's cooperation "that actually went above and beyond" what was expected.
In sum, I agree with the majority's finding that the conduct of the respondent violated the Rules of Professional Conduct. However, I also agree with the majority of the hearing committee and disciplinary board that a one year suspension with six months suspended would sufficiently discipline the respondent and adequately serve the purposes of the attorney disciplinary system. See In re Bolton, 02-0257 (La.6/21/02), 820 So.2d 548.
NOTES
[1] Jalila Jefferson is a daughter of United States Representative William Jefferson, who is married to Judge Green's sister.
[2] At all relevant times, Judge Green was subject to Canon 7(A)(1)(d) of the Code of Judicial Conduct, which provides that a judge shall not ". . . solicit funds for, pay an assessment to, or make a contribution to a political organization or candidate or purchase tickets for political party dinners or other campaign functions." [Emphasis added.]
[3] Following a federal investigation known as Operation Wrinkled Robe, Judge Green was convicted by a jury of one count of mail fraud, stemming from his handling of political contributions from a Gretna bail bonds company. He was sentenced to serve 51 months in prison. In August 2005, Judge Green resigned his judicial office, and in February 2006, he permanently resigned from the practice of law in lieu of discipline. In re: Green, 05-2120 (La.8/23/05), 913 So.2d 113; In re: Green, 06-0141 (La.2/8/06), 920 So.2d 861.
[4] The ODC conceded this point in its pre-hearing memorandum, acknowledging that there is "no direct evidence that would suggest or indicate that the $800.00 cash contribution made to Judge Green for the benefit of the Jefferson campaign was tied to any specific benefit."
[5] "Knowledge" is defined by the ABA Standards as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." In contrast, "negligence" is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."
[6] Specifically, Standard 7.2 provides that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system. In contrast, Standard 7.3 applies when such conduct is found to be negligent, and provides that reprimand is generally appropriate.
[7] The court stated:

Because much of this case turns on respondent's subjective intent, we place great emphasis on the findings of the members of the hearing committee on this issue. The three members of the hearing committee, two of whom were attorneys and one of whom was a lay person drawn from the community, had the opportunity to see and hear the witnesses, including respondent, who testified in this matter. Unlike the disciplinary board and this court, the hearing committee was not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. See, e.g., In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47; Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206. The hearing committee concluded that respondent was credible when he testified he had no intent to offer a bribe . . . or influence the outcome of the case in any way, and that his actions were negligent rather than intentional. While the evidence could support a contrary conclusion, we have observed in a civil context that where the fact finder is presented with two permissible views of the evidence, the fact finder's choice between them is not clearly wrong. Rosell v. ESCO, 549 So.2d at 840, 844 (La. 1989). Although this court is the trier of fact in bar disciplinary cases, we are not prepared to disregard the credibility evaluations made by those committee members who were present during respondent's testimony and who act as the eyes and ears of this court. Therefore, we cannot say the hearing committee was clearly wrong when it determined, based on its credibility determinations, that respondent did not intend to offer a bribe or otherwise improperly influence the outcome of the case.