# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 3, 2023

Lyle W. Cayce
Clerk

No. 22-30231

Jonathan B. Andry, Louisiana Bar Roll No. 20081,

*Appellant.*

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-MC-2478

ON PETITION FOR PANEL REHEARING

Before Stewart, Willett, and Oldham, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

The petition for panel rehearing is GRANTED. We withdraw our prior opinion of November 29, 2022, and substitute the following:

This case concerns attorney misconduct in the Court-Supervised Settlement Program established in the wake of the 2010 Deepwater Horizon oil rig disaster. Jonathan Andry, a Louisiana attorney representing oil spill claimants in the settlement program, was accused of funneling money to a settlement program staff attorney through improper referral payments. In a disciplinary proceeding, the en banc Eastern District of Louisiana found that Andry's actions violated the Louisiana Rules of Professional Conduct and suspended him from practicing law before the Eastern District of Louisiana for one year. Andry appeals, arguing that the en banc court misapplied the Louisiana Rules of Professional Conduct and abused its discretion by

No. 22-30231

imposing an excessive sanction. Finding that some, but not all, of Andry's arguments have merit, we REVERSE the en banc court's order in part, AFFIRM in part, and REMAND for further proceedings.

I

This matter comes to us for the third time,[1] bringing with it a nearly ten-year procedural history. In the months following the 2010 Deepwater Horizon disaster, hundreds of individual and class actions were filed in state and federal courts on behalf of the thousands of victims. Many of those claims were consolidated in the Eastern District of Louisiana Deepwater Horizon multi-district litigation (MDL).[2] In 2012, BP reached a settlement with the MDL plaintiffs, which established the Court-Supervised Settlement Program (CSSP) to evaluate and award the payment of economic damages to individuals and businesses affected by the oil spill.

In 2013, misconduct by several attorneys in connection with the CSSP process came to light. Specifically, Lionel Sutton, a Louisiana attorney who had been representing CSSP claimants with his wife Christine Reitano through their law firm, Sutton Reitano, accepted a job as a staff attorney with the CSSP, subsequently withdrawing from representation of claimants in the CSSP. Sutton and Appellant Andry were friends from law school, and Sutton referred one of his prior CSSP clients, Casey Thonn, to Andry Lerner LLC ("AndryLerner"), the law firm Andry owned in partnership with attorney Glen Lerner.[3] Sutton then communicated to

---

[1] *See In re Deepwater Horizon*, 824 F.3d 571 (5th Cir. 2016) (per curiam); *In re Andry*, 921 F.3d 211 (5th Cir. 2019).

[2] Transfer Order from the Judicial Panel on Multidistrict Litigation, *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 2:10-MD-217 (E.D. La. Aug. 10, 2010).

[3] Sutton continued to represent Thonn in an unrelated civil matter.

No. 22-30231

Lerner that he was expecting a portion of the fee earned by AndryLerner from its representation of Thonn. Andry later directed another AndryLerner attorney to send an "Attorney Referral Agreement" to Sutton and Reitano providing that all attorney fees recovered in the Thonn matter would be divided equally between Sutton Reitano and AndryLerner. This agreement was never executed. Lerner then transferred portions of the contingency fees that AndryLerner received in the Thonn matter to Sutton, sending him three payments totaling more than $40,000 over the course of six months.

Upon receiving an anonymous tip concerning improprieties in the CSSP process, the MDL district court appointed Louis Freeh as special master to investigate the misconduct. The special master's report recommended that Andry be prevented from representing CSSP claimants. Judge Barbier, the district court judge overseeing both the MDL and CSSP, ordered Andry to show cause as to why he should not adopt the recommendation. Following an evidentiary hearing and an opportunity to respond in writing, Judge Barbier determined that Andry violated the Louisiana Rules of Professional Conduct and disqualified him from participating further in the CSSP or collecting fees.

Andry then appealed to this court in his first of three appeals.[4] Appealing with Lerner, Andry argued that the district court misapplied the Louisiana Rules of Professional Conduct and abused its discretion by imposing a one-year suspension.[5] We disagreed, holding that the district court "did not abuse its discretion in finding that Andry and Lerner violated

---

[4] *See In re Deepwater Horizon*, 824 F.3d 571.

[5] *Id.* at 577.

No. 22-30231

the Louisiana Rules of Professional Conduct or in fashioning an appropriate sanction."[6]

At the district court's direction, the special master filed a disciplinary complaint against Andry with the en banc court of the Eastern District of Louisiana (EDLA). The disciplinary complaint was referred to the EDLA's Lawyer Disciplinary Committee, which submitted a confidential report to the en banc court. Concluding that a hearing was unnecessary given the prior extensive investigation and hearing in the MDL, the en banc court filed an order finding Andry violated the Louisiana Rules of Professional Conduct and suspending him from practicing law before the EDLA for one year. Andry appealed to this court for the second time.[7] This time, we agreed with him, holding that Andry was entitled to a disciplinary hearing under the EDLA Rules for Lawyer Discipline.[8]

On remand, the en banc court directed the EDLA's Lawyer Disciplinary Committee to prosecute the matter. Following discovery and evidentiary hearings, the en banc court found that Andry clearly violated duties owed to the legal system, the court, and the profession through his violation of the Louisiana Rules of Professional Conduct. Specifically, the en banc court held that Andry violated:

> (1) Rule 1.5(e) which governs the division of fees between attorneys at different firms;

---

[6] *Id.* at 586.

[7] *In re Andry*, 921 F.3d 211.

[8] *Id.* at 215 ("Thus, we conclude that the EDLA Rules require that Andry receive a Rule 7 hearing before discipline is imposed by the Eastern District.").

(2) Rule 8.4(a), which prohibits assisting another attorney in violating the Rules of Professional Conduct;

(3) Rule 8.4(c), which prohibits engaging in conduct involving dishonesty, deceit, and misrepresentation; and

(4) Rule 8.4(d), which prohibits conduct that is prejudicial to the administration of justice.

The en banc court suspended Andry from practicing law in EDLA for one year (three concurrent one-year suspensions) for violating Rules 1.5(e), 8.4(a), and 8.4(d). For Andry's violation of Rule 8.4(c), the court ordered a public reprimand.

In this third appeal to this court, Andry argues that the en banc court misapplied Louisiana Rules of Professional Conduct 1.5(e), 8.4(a), and 8.4(d). Andry also contends that the en banc court abused its discretion by imposing a too-harsh sanction. Andry does not challenge the en banc court's application of Rule 8.4(c).

## II

A federal court may hold attorneys accountable to the state code of professional conduct. *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 341 (5th Cir. 1993). "Whether an attorney's conduct is subject to sanction under a specific rule of professional responsibility is a legal issue which this court reviews de novo." *In re Mole*, 822 F.3d 798, 802 (5th Cir. 2016) (per curiam). "Sanctions imposed against an attorney by a district court are reviewed for abuse of discretion." *United States v. Brown*, 72 F.3d 25, 28 (5th Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). "That discretion is abused if the ruling is based on an 'erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).

No. 22-30231

## III

## A

Andry first argues that Rule 1.5(e) of the Louisiana Rules of Professional Conduct does not apply to payments between successive attorneys. We hold that the rule is ambiguous as to whether it applies in these circumstances. Therefore, the en banc court erred in failing to apply the rule of lenity in Andry's favor.

Rule 1.5(e) says:

A division of fee between lawyers who are not in the same firm may be made only if:

> (1) the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive;

> (2) the total fee is reasonable; and

> (3) each lawyer renders meaningful legal services for the client in the matter.

La. R. Prof'l Conduct 1.5(e).

Andry contends that the rule solely applies where two or more attorneys remain jointly responsible to a client, not in situations where a successor attorney splits a fee with a predecessor. Andry's interpretation is not unreasonable based on the rule's text. Rule 1.5(e)(1)'s requirement that the client agree to representation by all of the lawyers *involved* can reasonably be understood to mean all lawyers *presently involved* in the matter. Similarly, 1.5(e)(3) is written in present, not past, terms: "[E]ach lawyer *renders* meaningful legal services." This too implies that the rule was intended to apply when multiple attorneys render legal services *at the same time*.

No. 22-30231

At minimum, the text of the rule leaves some ambiguity as to whether it applies in this context. This ambiguity is seemingly resolved in Andry's favor by advisory opinions from both the Louisiana State Bar Association (LSBA) and American Bar Association (ABA). In a footnote of a publicly published advisory opinion, the LSBA Rules of Professional Conduct Committee stated: "Rule 1.5(e) would not apply" "where lawyers never worked together simultaneously on the case." Louisiana State Bar Ass'n Rules of Pro. Conduct Comm., Public Op. 12-RPCC-018, at 2 n.3 (2012). Similarly, the ABA's Committee on Ethics and Professional Responsibility issued a formal advisory opinion discussing Rule 1.5(e) of the Model Rules of Professional Conduct, which similarly governs attorney fee sharing.[9] The opinion stated that the rule "is limited to situations where two or more lawyers are working on a case simultaneously—not sequentially." ABA Comm. on Ethics & Pro. Resp., Formal Op. 487 (2019).

Still, there are factors that muddy the water. The single strongest factor weighing against Andry's interpretation is that, when faced with identical facts, the same party, the same application of Rule 1.5(e), and a similar proceeding below in Andry's first appeal of the MDL court's sanctions order, we held squarely that "the district court properly applied

---

[9] Louisiana's Rule 1.5(e) of Professional Conduct mirrors Rule 1.5(e) of the Model Rules of Professional Conduct, but the two are not identical. The model rule says a division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

(2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

(3) the total fee is reasonable.

MODEL RULES OF PRO. CONDUCT r. 1.5(e) (AM. BAR ASS'N 2020).

Rule 1.5(e)."*In re Deepwater Horizon*, 824 F.3d at 582.[10] As support, we cited the district court's statement during its oral findings in the MDL that Rule 1.5(e) is intended to ensure that attorneys "can't just get a fee for referring a case to another lawyer without doing some work." *Id.* at 581.

Precedent from Louisiana courts, while not conclusive, also weighs against Andry. For instance, in *Bertucci v. McIntire*, the court applied Rule 1.5(e)'s close predecessor[11] to a referral fee situation in which the referring attorney "maintained an attorney client relationship" after referral to another attorney but only performed a small proportion of tasks on the matter. *Bertucci v. McIntire*, 96-933 (La. App. 5 Cir. 3/25/97), 693 So.2d 7. And in *Dukes v. Matheny*, the court went a step further, indicating that Rule 1.5(e)'s predecessor rule[12] would apply to a fee arrangement in a situation where "the attorneys ha[d] not been jointly involved in the representation of the client." *Dukes v. Matheny*, 2002-0652, p. 5 (La. App. 1 Cir. 2/23/04), 878

---

[10] Andry's argument has evolved slightly. Appealing his initial sanctions, Andry argued that the case "was not a referral fee … but instead, was a *quantum meruit* fee," which does not trigger Rule 1.5(e). In this case, Andry drops the implication that the specific type of fee matters, arguing instead that Rule 1.5(e) *never* applies to payments between successive firms when there is no joint representation. Despite this subtle difference, our holding in *In re: Deepwater Horizon* was broad enough to address both arguments. 824 F.3d at 582.

[11] In 1997, Rule 1.5(e) of the Louisiana Rules of Professional Conduct stated that division of fees between lawyers who are not in the same firm may be made only if:

> (1) The division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

> (2) The client is advised of and does not object to the participation of all the lawyers involved; and

> (3) The total fee is reasonable.

La. R. Prof'l Conduct 1.5(e) (1997).

[12] *Dukes v. Matheny* applied the version of Rule 1.5(e) detailed in note 11.

No. 22-30231

So.2d 517, 520. These cases suggest that the current version of Rule 1.5(e) would apply to fee splitting between successive attorneys.

The principal cases Andry relies on are not particularly illuminating in either direction. *Saucier v. Hayes Dairy Products, Inc.* and *O'Rourke v. Cairns* together stand for the proposition that when a predecessor attorney signs a contingency-fee contract with a client before being discharged, he is entitled to share in the contingency fee that a successor attorney earns, with the fee apportioned based on several factors, including the work performed by the predecessor attorney. *See Saucier*, 373 So.2d 102 (La. 1979); *O'Rourke*, 95-3054 (La. 11/25/96), 683 So.2d 697 (La. 1996). This holding is not necessarily inconsistent with the application of Rule 1.5(e) to fee splitting between successive attorneys. In fact, neither *Saucier* nor *O'Rourke* mentions Rule 1.5(e). And there is no clear indication that the fee splitting between successive attorneys mandated by the court in those cases failed to comply with Rule 1.5(e), as it existed at the time.

Given the compelling arguments on both sides, we conclude that Rule 1.5(e) is ambiguous as applied to this set of facts. "Because attorney suspension is a quasi-criminal punishment in character, any disciplinary rules used to impose this sanction on attorneys must be strictly construed resolving ambiguities in favor of the person charged." *United States v. Brown*, 72 F.3d 25, 29 (5th Cir. 1995) (citing *Matter of Thalheim*, 853 F.2d 383, 388 (5th Cir. 1988)). Thus, we hold that the en banc court erred by failing to apply the rule of lenity in favor of Andry.

B

Andry next argues that the en banc court misapplied Louisiana Rule of Professional Conduct Rule 8.4(a) which states, in relevant part, that it is professional misconduct for a lawyer to "knowingly assist or induce another to [violate or attempt to violate the Louisiana Rules of Professional Conduct],

or do so through the acts of another[.]" La. R. Prof'l Conduct 8.4(a). The en banc court held that Andry violated this rule by "facilitat[ing] the payment of Thonn attorneys' fees to Sutton despite the lack of a written fee splitting agreement between Thonn and the various firms involved," thereby assisting Lerner and Sutton in violating the Rules. This holding is dependent on the underlying proposition that payments between successor law firms with no joint representation can violate Rule 1.5(e). Since we hold that the en banc court misapplied Rule 1.5(e), we also hold that the en banc court erred in its application of Rule 8.4(a).

C

Next, Andry argues that the en banc court erred in holding his conduct violated Rule 8.4(d), which prohibits attorneys from "[e]ngag[ing] in conduct that is prejudicial to the administration of justice." La. R. Prof'l Conduct 8.4(d). Andry contends that because the payments between Lerner and Sutton were "permissible under Louisiana law and did not violate Rule 1.5(e)," they do not constitute misconduct. Andry asserts that underlying misconduct, not merely "the appearance of impropriety" is necessary for an 8.4(d) violation.

Here, we disagree. Andry's argument ignores that it was not just the appearance of misconduct, but *actual misconduct* that the en banc court uncovered. Andry's underlying misconduct was the "payment or facilitation of payments" to a CSSP staff attorney while representing claimants in the CSSP process. It was these payments, not merely the perception they created, that violate Rule 8.4(d).[13] And damningly, the en banc court found

---

[13] It is true that in its application of Rule 8.4(d), the en banc court heavily emphasized the negative perception that Andry's behavior created rather than Andry's underlying misconduct. However, "we may affirm for any reason supported by the record,

that Andry did not act blindly, concluding that "Andry acted intentionally and knowingly to his own financial advantage." Courts, including this one, have regularly applied 8.4(d) in cases where attorneys attempt, or create the appearance of attempting, to influence impartial decisionmakers improperly. *See In re Mole*, 822 F.3d 798 (holding that attorney hiring another attorney for the purpose of motivating judge's recusal is prejudicial to the administration of justice and implies an ability to improperly influence a judge in violation of Louisiana Rules of Professional Conduct 8.4(d)); *In re LeBlanc*, 2007-1353 (La. 11/27/07), 972 So.2d 315 (per curiam) (holding that attorney giving money to judge for his niece's campaign for state legislature is prejudicial to the administration of justice in violation of Louisana Rules of Professional Conduct 8.4(d)). This case is no different.

Rule 8.4(d), more than Rule 1.5(e), gets to the heart of Andry's misconduct. The core of the wrongdoing was not the way fees were split between attorneys, but the fact that money was sent to an attorney involved in the claims administration process by an attorney representing claimants. Thus, the en banc court did not err in finding that Andry violated Rule 8.4(d).

## D

Andry's final argument is that the en banc court abused its discretion in choosing suspension as its sanction. As we have already held that Rule 1.5(e) and 8.4(a) do not apply to Andry's conduct, we only review the en banc court's imposition of a one-year suspension for the 8.4(d) violation.

Andry first contends that the en banc court abused its discretion in using a 12-month suspension as the baseline sanction for his rule violations. The Supreme Court of Louisiana, referring to conduct prejudicial to the fair

---

even if not relied on by the district court." *United States v. Gonzalez*, 592 F.3d 675 (5th Cir. 2009).

administration of justice, has said "[t]he baseline sanction for this type of misconduct is a period of suspension . . . ." *In re Ruffin*, 2010-2544, p. 6 (La. 1/14/11), 54 So.3d 645, 648 (per curiam). And, as Andry's brief itself points out, courts have often imposed a 12-month suspension for misconduct creating the appearance of impropriety. *See In re Mole*, 822 F.3d 798. "The question before us is not whether we would [impose the same punishment] but, rather, whether the district court abused its discretion in doing so." *In re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999). We hold the en banc court did not abuse its discretion in using a one-year suspension as a baseline sanction for Andry's Rule 8.4(d) violation.

Andry next argues that the en banc court abused its discretion by weighing too many aggravating and too few mitigating factors. When imposing sanctions against an attorney, "a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors." *Id*. Louisiana courts have typically looked to the ABA's Standards for Imposing Lawyer Sanctions for direction on which aggravating and mitigating factors to consider. *La. State Bar Ass'n v. Perez*, 550 So.2d 188 (La. 1989). Here, the en banc court considered the ABA standards in detail, accounting for both aggravating and mitigating factors. Andry may not agree with the way the en banc court weighed the factors, but we cannot say that the sanctions were based on an erroneous view of the law or the facts. "Because the en banc court considered and applied the ABA standards before imposing discipline, and because the sanction imposed is consistent with Louisiana precedent, we hold that the en banc court did not abuse its discretion in imposing its chosen sanction." *In re Mole*, 822 F.3d at 807.

IV

No. 22-30231

The en banc court misapplied Louisiana Rules of Professional Conduct Rule 1.5(e) and 8.4(a) but not Rule 8.4(d). Additionally, the en banc court did not abuse its discretion by imposing a one-year suspension on Andry for his violation of 8.4(d).

Accordingly, we REVERSE the en banc court's order suspending Andry from the practice of law for one year each for violations of Rule 1.5(e) and 8.4(a). We AFFIRM the en banc court's holding that Andry violated Rule 8.4(d). Finally, we REMAND to the en banc court for further proceedings. On remand, the court is free to impose on Andry whatever sanction it sees fit for the 8.4(d) violation, including but not limited to its previous one-year suspension.